STATE OF MISSOURI ex rel. LANE, Relator, v. ROB-
INSON, MANESS and STARK, Judges of the
Newton County Court, Appellants.

**St. Louis Court of Appeals, February 18, 1908.**

1. **PRACTICE: Bill of Exceptions: Amending Bill of Exceptions.**
Where, after the judge of the trial court had signed a bill of
exceptions, it was discovered that it was incomplete, and, before
the filing of the same, it was amended by the addition of other
essential matters, when it was resigned by the judge and filed
within the time previously fixed for filing it, the bill of excep-
tions as thus amended and filed became a part of the record and
was not open to the objection that it did not contain the matters
added after the first signature of the judge. [Distinguishing
Atchison v. Railroad, 94 Mo. App. 572.]

2. **LOCAL OPTION: Elections: Resubmission: Towns of 2,500
Inhabitants.** Where the local option law was adopted in a
county containing a town of less than 2500 inhabitants, such
town on afterwards attaining a population of more than 2,500
inhabitants could not resubmit the question of local option, sep-
arately from the county, within four years from the first election
mentioned. [Sections 3028, 3033, Revised Statutes 1899.] The
latter section prohibits the resubmission of the question within
four years "in the same county." This would include a town
situated in that county, though it had afterwards acquired the
right to vote separately by increase of population.

Appeal from Newton Circuit Court.—*Hon. F. C. John-
ston,* Judge.

REVERSED AND WRIT DENIED.

*John T. Sturgis,* with *James H. Pratt* for appellant.

*Horace Ruark* for respondent.

(1) The original bill of exceptions not contain-
ing either motion for new trial, motion in arrest, or affi-
davit for an appeal, and no call for their insertion, there
is nothing before this court for review. State ex rel.
v. Pulliam, 104 Mo. App. 94; Parsons v. Clark & Co.,

98 Mo. App. 28; Warher v. Morin, 13 Mo. 455; Kurz v. Turley, 4 Mo. App. 237. It may be contended by appellants that the two bills of exception taken together show the testimony, motion for new trial, etc. But the judge has only power to approve, sign and order made a part of the record, one bill of exceptions (the act of filing with the clerk is appellants' and not the court's act) and when a bill is approved, signed and ordered filed by the judge, his jurisdiction over the matter, excepting amendments *nunc pro tunc,* ends. Or to quote the language of this court in Atchison v. Railroad, 94 Mo. App. 572, "We think when the judge approved and signed the paper presented to him on April 23 as a bill or a part of a bill of exceptions, and ordered the same to be made a part of the record, he exhausted his jurisdiction in respect to signing a bill of exceptions and could not thereafter sign a remainder, supplemental or additional bill of exceptions." R. S. 1899, sec. 728; Pace v. Shoe Co., 103 Mo. App. 662; Burdoin v. Trenton, 116 Mo. 370.   (2) We submit that the action of the lower court in granting a peremptory writ was clearly right for the reason that the city of Granby, having attained a population of 2,500 inhabitants, and ascertained the same in the manner provided by section 3028, Revised Statutes 1809, was authorized under the provisions of that statute to determine the matter for itself.   Woodlief v. State, 2 S. W. 812; Wisenhunt v. State, 18 Tex. App. 491; Brown v. Commonwealth, 34 S. W. 12; Commonwealth v. County Court, 34 S. W. 276. (3) Beyond question it was the purpose of the local option Act to permit two municipal bodies, counties, excluding cities having 2,500 population or more, and cities having a population of 2,500 inhabitants or more, to determine for themselves whether or not intoxicating liquors should be sold, and that the determination of the matter by the one should not affect the right of free choice

by the other.     "The reason of any law is its life and a
proper conception of its reason is oftentimes essential
to a proper understanding of the meaning and ten-
dency of the law itself."     Bank v. Skeen, 101 Mo. 683;
Ex parte Conrades, 185 Mo. 423.

NORTONI, J.—1.    The first question presented re-
lates to the bill of exceptions.     The court allowed an
appeal in the cause and granted appellants leave to
file the bill in vacation.     In the interim and before
the time granted by the court therefor had expired, one
of appellants' counsel presented to the judge in cham-
bers what purported to be a bill of exceptions.    It
was indorsed "OK" by counsel representing the adverse
party which, of course, taken together with the fact
that appellants' counsel had presented it, indicated the
same to have been agreed upon by the parties.    In
view of this, the judge signed the bill and ordered it
filed in the case without examining its contents.    The
bill was not filed, however, and on the following day
appellants' counsel, other than the one who had pre-
sented the bill to the judge for his signature, looked
into the same and discovered that both the motion for
new trial and motion in arrest of judgment, together
with the exceptions to the action of the court in over-
ruling the same, were omitted from the bill.    Of course
such omission would be fatal to a review of the case on
its merits in this court.    When counsel made this dis-
covery, the bill not having yet been actually filed, he
proceeded to and did incorporate the motions and ex-
ceptions mentioned in an addenda to the same immedi-
ately following the certificate and signature of the judge
to the incompleted bill.    Before the time for filing had
expired, he obtained a further extension therefor from
the judge, which was duly entered of record, and within
the time granted by such extension, presented a complet-
ed bill to the judge for approval and signature.    The

judge examined and approved the same with the addenda thereto, containing the motions for new trial and in arrest, together with the exceptions to the action of the court in overruling the same.    At the conclusion of the entire bill, that is, at the conclusion of the addenda which was annexed to the original document and immediately following the judge's first signature thereto, the judge made and signed the following certificate: ·

"That part of the foregoing bill of exceptions, beginning with page one and extending to page 35, both inclusive, was presented to the undersigned judge of said Newton County Circuit Court to be signed on August 6, 1906.    As said bill of exceptions as then presented had endorsed thereon the words, "O. K., Horace Ruark," and was presented by James H. Pratt, one of defendants' attorneys herein, it was presumed by the undersigned judge that the same was correct and had been examined and approved by all the attorneys in the case, and the same was then signed by said judge without examination or question and was handed back to Mr. Pratt.    On the next day, Aug. 7th, 1906, said judge's attention was called to the fact that material matters particularly relating to the motion for new trial and in arrest as set out on pages 36 to 39 had been omitted, and said bill had not been seen by or any opportunity given to defendants' attorney, John T. Sturgis, associated with Mr. Pratt in the trial of said cause, to examine said bill, and thereupon an order was made extending the time to file the bill of exceptions herein which time has since been extended by a further like order.

"And now no bill of exceptions having yet been filed herein, and within the time given and extended by the court for that purpose and said bill of exceptions having been made correct by said judge by the insertion of the matters contained on said pages 36 to 39, this complete and correct bill of exceptions is now signed by the

undersigned judge of said Newton County Circuit Court and ordered filed and made a part of the record herein on this 2nd day of October, 1906.

"Witness my hand as judge of said court the day and date last above given.        F. C. JOHNSTON,

"Judge Newton County Circuit Court."

On the back of the bill of exceptions was indorsed the following:    "Filed Oct. 2, 1906; J. H. Centers, Clerk Circuit Court."

It further appears from the record in the case that this completed bill of exceptions, all in one document, and over the signature and certificate of the judge last above quoted, was actually filed in the cause.    Counsel for respondent insists that the bill of exceptions, as approved by the judge upon the second presentation to him, is not the bill of exceptions in the case for the reason, it is said, the judge had exhausted his authority over the matter when he signed and ordered filed the document first presented, which did not contain the motions for new trial and in arrest of judgment.    It is argued that the first document presented is the true bill of exceptions and as that bill contained neither a motion for new trial nor a motion in arrest of judgment, then such motions are not before this court and therefore we are precluded from reviewing the case on its merits.    The argument proceeds upon the theory that the judge in vacation had exhausted his authority over the bill by affixing his signature and ordering filed the first or incompleted bill.    The case of Atchison v. Railroad, 94 Mo. App. 572, 72 S. W. 489, is relied upon to support the proposition advanced.    In that case, it is true the court said:    "We think, when the judge approved and signed the paper presented to him on April 23rd as the bill, or part of the bill of exceptions, and ordered the same to be made a part of the record, he exhausted his jurisdiction with respect to signing the bill of exceptions and could not thereafter sign a re-

mainder, supplemental or additional bill of exceptions."
Now what was said in that case was entirely appropriate
to the facts in judgment, but not so in this case. The
case presented there was one where the appellant, in
open court, had presented a portion of its bill of excep-
tions, which was duly signed and ordered filed by the
court and not by the judge in vacation. That is to
say, the court was then in session and the court signed
and ordered the bill filed in open court. It follows,
of course, that the bill, as signed and ordered filed by
the court, was actually filed and thereby became en-
grafted upon the record of the court. The bill became
a record in the cause. The court granted time, however,
to appellants to prepare the remainder of its bill of ex-
ceptions, which was done within the time granted and
this remainder was signed and ordered filed by the judge
in vacation. Now while the opinion lays no particular
stress upon the fact that the first document presented,
that presented in open court, was actually filed in the
case, such appears to be a fact, as is disclosed by the
discussion of the subject, for the court, in treating the
question, says: "The designation of the second filing
of a partial bill of exceptions as the remainder of the
bill, is a mere subterfuge designed to hide the fact that
*there were filed in the court two incomplete bills of ex-
ception."* So we see the case in judgment there was
where the court had signed and ordered filed a bill of
exceptions in the first instance, which bill had been ac-
tually filed, and thereby became parcel of the record of
the cause, and these facts, when considered together, no
doubt did exhaust the jurisdiction of the judge over the
bill of exceptions in that case, except in the case of an
amendment *nunc pro tunc* from some proper minutes
on the records of the court, which perchance had been
overlooked. The fact that the bill had been filed and
engrafted upon the record in that case before the second
document, denominated the remainder of the bill, was

signed by the judge in vacation, distinguishes it materially from the question here presented.    In the case at bar, the bill had not been filed.    The judge did nothing more than attach his signature and certificate and order it filed in vacation; which was not done.    Now it certainly cannot be true that this alone would exhaust the jurisdiction of the judge in that behalf, for it might appear a moment after his signature had been attached that some serious omissions in the bill were made, just as it did appear a day later; or that something had been incorporated therein as true which had no place in the cause.    Under circumstances of this kind, the judge would certainly have authority to correct the bill before it was filed and attached to the record of the cause, to the end that it shall speak the truth when filed and thereby dignified by becoming parcel of the record and the foundation of the judgment to be given in the appellate tribunal.    It is the act of filing the bill which renders it a parcel of the record in the cause and removes it from the province of the judge to make alterations therein.

2.    This is a proceeding by mandamus, seeking to compel the county court of Newton county to issue a license authorizing relator to conduct a dramshop in the town of Granby in said county, notwithstanding the fact that local option had been adopted in the entire county, including Granby, when it was a town of less than 2,500 people.    It is insisted by relator that the town of Granby having increased in population so that it exceeded 2,500 in population, it was competent for it to vote separately on local option and repudiate the law theretofore adopted by the entire county, even though the four year period mentioned in the statute had not yet expired.    It appears that in June, 1904, the provisions of the local option statutes were duly adopted by an election held for local option purposes in Newton county and the town of Granby, which

then had a population of less than 2,500 inhabitants, participated in the election. Afterwards the inhabitants of that town increased in number to such an extent that the town council proceeded by ordinance therefor and caused to be taken a census of its inhabitants looking to a submission of the question whether or not the prohibitory features of the local option statute should continue to obtain within the corporate limits of the town. The enumeration of the inhabitants was made in December, 1905. The reports of this census disclosed the then population to slightly exceed 2,500 persons. The authorities of the town, notwithstanding the fact that local option, as adopted by a vote of the entire county, including the town of Granby before it became of 2,500 inhabitants, had been in force less than the four year period mentioned by the statute, to-wit: less than two years; proceeded to and did order an election under section 3028, Revised Statutes 1899, and submitted to the qualified voters within the town the question of whether or not local option should obtain therein. At this election, ninety-one votes were cast in favor of the sale of liquors within the town and three against it. The result was declared and promulgated to the effect that prohibition, within the town, did not obtain and therefore it was competent to license dramshops therein. Relator proceeded to circulate a petition for a dramshop license and obtained sufficient signatures thereto, it is said (that is, two-thirds of the taxpaying citizens), to entitle him to such license under the mandatory provisions of the dramshop statutes R. S. 1899, sec. 2993), provided the county court found him to be a proper person and he complied with certain other details, etc. The application for a license to conduct a dramshop in the town of Granby was presented to the county court and all of the facts essential to the relator's right in that behalf were found in his favor, except the court declared itself to be without author-

ity to grant the same for the reason the prohibitory provisions of the local option law theretofore adopted in the county, still obtained in the town of Granby, notwithstanding the fact that said town had, by a second or subsequent vote, separately taken thereon after attaining a population of 2,500, repudiated the same. The county court having refused to grant a license for the reason last given, the relator applied to the circuit court and sued out a writ of mandamus against the judges of the county court seeking to compel them to issue such license for a dramshop. Upon a hearing, the circuit court made the alternative writ permanent and commanded the county court to issue the license to relator. From this judgment the judges of the county court have appealed.

It will be noticed the only question for decision is whether or not the local option law obtained within the town of Granby at the time mentioned. Of course, if it did, the county court was without authority and properly refused to grant the license. If the local option law did not obtain in that town, it was the duty of the county court, under the statute (sec. 2993), to grant the relator the license prayed for. A solution of this question involves the construction of at least two sections of our local option law (R. S. 1899, secs. 3028 and 3033), which are in pari materia, and a determination of the question whether a town of less than 2,500 inhabitants, the legal voters of which participated in the election by which local option was adopted in the county, can, within the four years period mentioned in those statutes, upon increasing its population to exceed 2,500, vote a second time independent of the body of the county, and repudiate a law adopted by its citizens less than four years theretofore. We have examined a large number of adjudicated cases seeking light on the question involved, but none of them are precisely in point, for the reason they predicate upon

statutes essentially dissimilar from our own.    Such cases, however, as we deem pertinent at all, will be cited in the opinion.    The question is essentially one of statutory construction and in view of this, some of the provisions of sections 3027 and 3032, essential to an understanding of the case, will be noticed and sections 3028 and 3033 copied in extenso.    Section 3028 authorizes the county court to submit to the qualified voters of the county who reside outside the corporate limits of any city or town having at the time a population of 2,500 inhabitants or more, the question whether or not local option shall be adopted in the county outside of such cities or towns.    The qualifications of the voters and the manner of conducting such election are therein likewise pointed out.    Section 3032, in part, provides, in event the local option statutes are adopted in the election, that it shall thereafter be unlawful to either directly or indirectly sell, give away or barter in any manner whatever, any kind of intoxicating liquors or beverages containing alcohol in any quantity whatever, under certain penalties prescribed.    The entire trend of the law goes to the effect that its prohibition shall obtain in all parts of the county, when adopted, except in towns of 2,500 or more inhabitants, which may vote the proposition up or down, in accordance with the popular will, as will more fully appear by reference to section 3028.    After the law is once adopted or defeated in the county or city, as the case may be, then by section 3033 it is provided that the question of local option shall not be again submitted within the four years next thereafter in the same county or city, as the case may be.    We have here a case where the legal voters of the town of Granby, then containing less than 2,500 inhabitants, participated with the qualified voters of the remainder of Newton county and adopted the local option law.    In less than two years thereafter the town of Granby increased in population so that

it became a municipality of more than 2,500 inhabitants. Its legislative authority seized upon this fact, caused a census to be taken, and submitted the local option law to its voters, maintaining that by its increase in population, the status of the town had thereby changed with respect to the local option law so as to authorize it to vote separately within the four years' limit mentioned on the identical proposition, which many of its citizens had voted on less than two years before. Whatever authority, if any, there is for this proceeding, is to be found in sections 3028 and 3033, when read together. Those sections are as follows:

"Sec. 3028. *Same in cities of 2,500 or more, when held.*—Upon application by petition therefor, signed by one-tenth of the qualified voters of any incorporated city or town in this State having a population of twenty-five hundred inhabitants or more, to the body having legislative functions therein, such body shall order an election to be held in such city, to be voted at by the qualified voters thereof, and no others, to determine whether or not spirituous or intoxicating liquors shall be sold within the limits of such city or town. Such election shall be held within forty days after the receipt of such petition, but not within sixty days of any municipal or state election held in such city; and shall be conducted, the returns thereof made and the result thereof ascertained and determined in accordance, in all respects, with the laws and ordinances governing municipal elections in such city, and frauds perpetrated and fraudulent voting, at such elections shall be offenses as prescribed for frauds and fraudulent voting at general elections held under the law of this State, and shall be punished as in such laws provided. The result of such election shall be entered upon the journals or records of the body ordering the same, and the expenses thereof shall be paid out of the treasury of said town in the same manner as the expenses of other

municipal elections: Provided, that for the purpose of determining the fact of whether or not any town shall be governed by the provisions of this section, such body having legislative functions therein may, under an ordinance thereof, take a census of the inhabitants of such town and the result of such census shall be entered upon the journals or records thereof, and such entry, or a certified copy thereof, shall be proof of such fact, and shall be filed with the clerk of the county court of the county in which such town is situated.

"Sec. 3033. *Question determined, not to be submitted for four years.*—Whenever the election in this article provided for has been held, and decided either for or against the sale of intoxicating liquors, then the question shall not be again submitted within four years next thereafter in the same county or city, as the case may be, and then only upon a new petition and in every respect conforming to the provisions of this article."

The question is: does the inhibition of this statute prohibit the holding of an election within the four year period in the town of Granby under the circumstances above stated? We are of the opinion that it does. It is provided therein that the question shall not be again submitted within four years next thereafter "in the same county or city, as the case may be." Now the town of Granby is "in the same county." It is parcel of Newton county and its qualified voters participated with those of the county in the election at which the law was adopted for the entire county. This being true by every principle of natural justice as well as the entire analogy of American institutions, the inhabitants of that municipality are in duty bound to abide for four years the policy adopted in the election in which each and every one of its qualified voters either participated or had the right so to do, and voluntarily waived the same. And this is true notwithstanding the fact that a large number of persons have taken up their abode

within the town since that time, for those persons came to Granby voluntarily and assumed the obligations of citizenship of their own volition and free will, knowing full well the state of the law on the subject. In this view, we have one set of inhabitants, those who resided there at the time of the election, impliedly accepting the law by participating, or waiving their right to participate in the election, and a second set, those who have taken up their abode there since its adoption, impliedly accepting the law by voluntarily becoming citizens of a community in which they knew full well the law obtained. Aside from all of this, the town of Granby is in Newton county and the statute, in express words, says the proposition shall not be again submitted for four years "in the same county or city, as the case may be." Here is an inhibition by the express words of the statute against the re-submission for four years in the same county. It is argued, however, that by the employment of the word "same" county or city, it does not inhibit an election to be held in the city of Granby alone and separately from the county, for it is not the "same" county or city in which the prior election was had, the prior election having been held for the entire county, whereas the second election was held for Granby alone. The legislative authority, for reasons no doubt satisfactory to it, did not see fit to employ the word "by" in this statute when speaking of the county, but employed the word "in" and prohibited an election "in" the same county; that is, in the body of the county and in such towns containing less than 2,500 inhabitants as voted upon the proposition in the county election on the same subject. If the statute prohibited the holding of a second election within four years "by" the "same county" or "by" the "same city," as the case may be, a stronger argument could be brought forward in favor of the inhibition going only to the county and not against the city upon attaining 2,500 inhabitants. Such is

not the law, however.    The inhibition contained in
the statute is against the election "in" the same county
for four years and not against the election "by" the
same county.    The town of Granby having voted on the
proposition as submitted by the county court, was parcel
of the county for local option purposes in that election
and must be considered parcel of and "in the same
county" at least for the period of four years, within the
meaning of the statute.    The town of Granby having
less than 2,500 inhabitants at the time of the election
it is clear it was precluded from exercising a local op-
tion separately on the question solely for the reason it
was parcel of the county for local option purposes with-
in the statute; that is, it contained less than 2,500 in-
habitants and for that reason fell within the purview
of the statute with respect to a local option county and
was therefore "in the same county" then and is "in
the same county" now, within the contemplation of the
local option law.    Granby having been parcel of the
same county for local option purposes at the time of
the election, essentially remains in the same county for
these purposes until the four year limit expires.    The
views above expressed are in consonance with what ap-
pears to be a general rule on the subject, gleaned from
a number of adjudicated cases to the effect that when
a larger subdivision, such as a county, is authorized
to hold an election and adopt or reject the law and exer-
cises this right, such action by it will estop those minor
subdivisions of the larger body which participated in
the county election, from again voting upon the matter
during the time limited in the statute, even though they
had a right to vote separately, at or prior to the elec-
tion conducted by the larger body within which they
are located.    The rule is said to proceed upon the
theory that the minor subdivisions having the right to
vote separately, voluntarily  waived the same, and by
joining with the larger body in the election, are by the

plainest principles of natural justice, estopped thereafter from asserting to the contrary.    The rule is thus stated in 19 Amer. and Eng. Ency. Law (2 Ed.), 510-511, as follows:

"b.   EFFECT OF ADOPTION.—*In Minor Subdivisions of Territory Adopting.*—Where a statute provides for the submission of the question of adoption to the voters of an entire county, or independently thereof to the voters of the minor subdivisions of the county, the result of the election in the entire county governs the operation of the law in the subdivisions thereof when the latter do not hold separate elections to determine whether the law shall be in force in the particular subdivision." See also the following cases:    Tatum v. State, 79 Ga. 176; Commonwealth v. Bottoms, 57 S. W. (Ky.) 493; Tousey v. Stites, 66 S. W. (Ky.) 277; Smith v. Patton (Ky.), 45 S. W. 459; Police Jury v. Descamp, 105 La. 512; Adams v. Kelley (Tex. Civ. App.), 45 S. W. 859; State v. Harvey (Tex. Civ. App.), 33 S. W. 885; Roper v. McCoy (Tex. Civ. App.), 69 S. W. 459; Caldwell v. Grider, 88 Ala. 421.    It likewise comports with the general doctrine that where local option has been adopted for a certain district and the boundaries of such district are subsequently changed, the local option law is not thereby abrogated as to any portion of the district in which it has been adopted, even though the boundaries of the old district were subsequently changed. [Medford v. State (Tex. Crim. App.), 74 S. W. 768; Jones v. State, 67 Md. 256, 10 Atl. 216; Higgins v. State, 64 Md. 419, 1 Atl. 876; Nelson v. State (Tex. Crim. App.), 73 S. W. 502.]

In Higgins v. State, 64 Md. 419, 1 Atl. 876, a new local option district was carved out of an older one in which local option had been adopted, and it was determined that local option continued to obtain in the new district by virtue of the prior election in the old.

129 App—11

It seems that case, in principle, is quite in point here, for the proposition presented in the record before us essentially involves an attempt to carve out a new local option district; that is, the town of Granby, within the old district of Newton county; and under the authority of the cases last cited, it would seem that the local option law continued to obtain within the new district, Granby, for a period of four years at least from the date of the election, even though the new district be carved out by virtue of the town acquiring a population of 2,500 or more.

It is argued, however, that as section 3028, supra, authorizes the legislative authority of the town to provide by ordinance, etc., for and proceed to take a census of the inhabitants thereof in order to ascertain whether or not it had 2,500 population and was therefore competent to submit the proposition involved to its voters separately, that such provision, when considered together with section 3033, supra, manifests an intention on the part of the Legislature to permit such towns to proceed thereunder at any time they see fit, whether they be living under then existing local option adopted by the county, or not.    We are not impressed with this argument.    No word in the statute indicates such an intention nor can we find aught in the two sections, when read together, which point our minds to this conclusion.    Had the Legislature so intended, it could have expressed its purpose to that effect in a very simple phrase.    It did not do so.    It is not the province of the court to read words into the law where a full and fair sense is manifested without supplying such words.    To read such a provision into the statute, the court would be compelled to pass beyond its province of construction and enter the domain of legislation.    The provision referred to authorizes and points out the manner for such towns to proceed in the first instance and prior to their having participated with the county in adopt-

ing or rejecting the law within the four years theretofore. There is evidently no word therein indicating that by a mere influx of population, authority is conferred, notwithstanding the four years' limit, to abrogate local option which only a few months before had been adopted, as a result of an election in which the qualified voters of such town participated.

Entertaining these views, the judgment will be reversed and the writ denied. *Bland, P. J.,* concurs; *Goode, J.,* dissents.