JOHN BEIDLER *et al.* Admrs.

*v.*

LOUISA A. BRANSHAW, Admx.

*Opinion filed December 16, 1902—Rehearing denied February 5, 1903.*

1. ELEVATORS—*persons operating passenger elevators are common carriers.* Persons operating passenger elevators in buildings are common carriers, and must exercise the highest degree of care to prevent injury to passengers.

2. SAME—*the rule applies to freight elevators used to carry passengers.* The rules governing the liability of persons operating passenger elevators apply to freight elevators, when a person is rightfully upon such elevator as a passenger.

3. NEGLIGENCE—*when contributory negligence is matter of law.* While the question of contributory negligence is ordinarily for the jury, yet if there is no conflict in the evidence and the court can clearly see that the injury was the result of the negligence of the party injured, the jury should be instructed to find for defendant.

4. SAME—*when injury in elevator is result of contributory negligence.* One who is familiar with the construction of an elevator shaft,

and knows that there is a projection in the shaft which comes within an inch and a half of the elevator platform and that there is no guard railing upon that side of the elevator, is guilty of contributory negligence if he thoughtlessly stands in such a position that his foot is caught between the projection and the platform.

MAGRUDER, C. J., and CARTER, J., dissenting.

*Beidler* v. *Branshaw*, 102 Ill. App. 187, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is an action on the case, brought by the appellee in the superior court of Cook county to recover damages for an injury to her husband, which resulted in his death. The suit was brought against Jacob Beidler, the owner of the building in which was situated the elevator upon which appellee's husband was a passenger at the time of the injury. Beidler having died prior to the trial, appellants, as administrators, were substituted as defendants. The declaration consisted of one count, and averred the injury to have occurred by reason of the negligence of Jacob Beidler in failing to erect a guard or railing around the elevator and in permitting a large iron beam to project into the elevator shaft. The general issue was filed, and a trial resulted in a verdict and judgment in favor of the appellee for $3000, which has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendants moved the court to instruct the jury to find for the defendants, which the court declined to do, and the action of the court in that regard is mainly relied upon to reverse the case.

There is but little, if any, conflict in the evidence, which shows that Jacob Beidler, in his lifetime, was the owner of a building situated at No. 127 West Washington

street, in the city of Chicago, five stories high, with a basement, which was occupied by tenants. The building fronts south and extends north to an alley, known as "Waldo Place." At the rear of the building was located an elevator shaft, operated by Beidler for the use of his tenants. There was a stairway at the side of the elevator shaft, but the occupants of the building, and their employees, usually used the elevator in going from the different floors of the building, instead of the stairs, the elevator being used for both passengers and freight. The walls of the elevator shaft were brick, there being no openings in the east or south wall, but in the west wall there were five doors, one for each floor, and in the north wall, which was a part of the wall of the building, there was a door and five windows. The bottom of the door in the north wall was on substantially a level with the first floor and opened into Waldo place. It was about five and a half feet wide by six and a half feet high, and was the place through which freight was received and shipped out of the building. The door opened and closed by sliding up and down in a recess in the inside of the north wall, which is about eight inches deep, five and a half feet wide and sixteen feet high. In the recess, above the top of the door when raised, there is located a window, which is about three feet square and contains two panes of glass twenty-four by twenty-eight inches, and immediately above the window frame, which is about three and a half inches wide, is an iron slab about six and a half feet in length, one and a half inches in thickness and eight inches in width, which is set into the wall at each end and supports the wall above the window and is the lintel of the window. From the internal edge of the iron slab or lintel back to the wall on the under side of the slab or lintel it is about eight inches. The elevator car is six and a half feet square, with a flat bottom, and has guards or sides on the east and south about three and a half feet high, but has none on the north or

west side.  As the car passes up and down the shaft
the north side of the car as it passes said slab or lintel
comes within about one and a quarter or one and a half
inches of the inside of the slab or lintel.  Appellee's
intestate, who was forty-four years old, had been in the
employ of Howe & Davidson, tenants of Beidler, who
occupied the second and fourth floors of said building
as manufacturers, for about one year prior to his injury.
He worked generally as a teamster, hauling materials to
and from the building, and when not so employed he
was engaged as a laborer or porter in the factory.  No-
vember 30, 1896, at about eleven o'clock A. M., he got
upon the elevator with a truck, on which was a package
of paper and paper boxes, about two and a half feet long
by two feet wide.  The truck was about five and a half
feet long and about three feet wide, and the total height
of the truck and load was about four feet.  The truck
stood the long way east and west and was in about the
center of the car, and there was a space of about eigh-
teen inches between the truck and the north edge of the
car.  The deceased stood on the north side of the car,
facing south, with his back to the north door.  Cable
and Powers, fellow-workmen, were also upon the car.
The former stood upon the north and the latter upon the
south side of the car.  These, with Pettit, who was op-
erating the elevator and who stood upon the south-west
corner of the car, were the only persons upon the car.
When the elevator reached the slab or lintel over the
window the car jerked, and the deceased called out his
leg was fast.  On stopping the car it was found his heel
was caught between the edge of the elevator and the
iron slab or lintel.  His foot was badly crushed.  Blood
poisoning followed amputation, from the effects of which
he died on December 31, 1896.

F. J. CANTY, A. B. MELVILLE, (J. C. M. CLOW, of coun-
sel,) for appellants.

WILLIAM E. DEVER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The law is well settled in this State that persons operating elevators in buildings for the purpose of carrying persons from one story to another are common carriers of persons, and are required to exercise the highest degree of care and diligence in and about the operation of such elevators to prevent injury to passengers being carried thereon, and that the rules governing the liability of persons owning and operating passenger elevators in buildings apply to persons operating freight elevators when a person is rightfully upon such elevator as a passenger, and that while, from the necessary construction of a freight elevator, there cannot, in the nature of things, be the same immunity from peril upon a freight elevator as upon a passenger elevator, still the same degree of care must be exercised in the operation of each class of elevators to protect persons from injury who are thereon as passengers. (*Hartford Deposit Co.* v. *Sollitt,* 172 Ill. 222; *Springer* v. *Ford,* 189 id. 430.) In this case the elevator shaft was so constructed that at a point about sixteen feet above the first floor of the building, as the car ascended or descended, the north side of the car passed within a very short distance of the lintel of the lower window, and a passenger riding upon the car as it ascended might be caught between such projection and the north edge of the car if he permitted any portion of his person to project over the edge of the car, and that no guard or railing was upon that side of the car to prevent a passenger on the car, in its ascent, from coming in contact with the lintel and being crushed between the car and the projection at that point. Some expert evidence was introduced to show that such construction was usual in the city of Chicago. The question to be determined was whether or not the shaft was properly constructed and whether Jacob Beidler was negligent in maintaining

it in that condition, and not how elevators were usually constructed in the city of Chicago, (*Chicago, Rock Island and Pacific Railway Co.* v. *Clark,* 108 Ill. 113,) and we think the evidence fairly tended to prove the charge of negligence contained in the declaration.

The evidence further showed that the deceased was a man of mature years; that he had been in the employ of Howe & Davidson for about one year; that during that time a considerable portion of his time had been spent in loading and unloading materials near the door which opened from Waldo place into said elevator; that he had passed up and down upon said elevator repeatedly; that on the trip, when injured, he closed the elevator door, and from the nature of things must have known the manner in which the elevator shaft was constructed, and that the car came very near to the lintel over the lower window on the north side of the shaft as it passed up and down, and that there was no railing or guard on the car on the north and west sides, and fully appreciated the fact that if any part of his person projected over the north edge of the car the portion thus projecting would be liable to be caught between the car and the lintel as the car passed the window on its ascent and he be injured. At the time of the injury the elevator appears to have been in perfect order and operated in a skillful manner, and was being run slowly, and, so far as can be seen from the evidence, the sole cause of the injury was that the deceased stood so near the north end of the floor of the car that his heel projected over the edge thereof, and was caught between the edge of the car and the lintel as the car reached that point in its ascent. There was sufficient room for him to have stood upon the car in safety, and there was no evidence to show that he was thrown from the position which he had voluntarily taken upon the car as it started to ascend. Although it is true that the question of contributory negligence is ordinarily a question for the jury, yet when there is no conflict in

the evidence and the court can clearly see that the injury was the result of the negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant. In *Lovenguth* v. *City of Bloomington*, 71 Ill. 238, it is said (p. 241): "A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution." In *Werk* v. *Illinois Steel Co.* 154 Ill. 427, on page 432 the court say: "While questions of negligence or of contributory negligence are ordinarily questions of fact, to be passed upon by a jury, yet when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict in opposition to it, the court may withdraw the case from the consideration of the jury and direct a verdict."

We are satisfied that the injury in this case was caused by the negligence of the deceased in standing so near the edge of the car that his heel was caught as the car passed the lintel in its ascent; that he knew the construction of the elevator shaft and that the car in its ascent passed within a short distance of the lintel, and that it was without rail or guard on that side, and that he thoughtlessly stood upon the car in such a position that his heel was caught between the car and the lintel as the car passed that point, and that his negligence was of such a character as to prevent a recovery, and that the trial court should have so instructed the jury. The judgments of the superior and Appellate Courts will therefore be reversed.          *Judgment reversed.*

MAGRUDER, C. J., and CARTER, J., dissenting: We do not concur in the conclusion reached by the majority of the court in this case. We regard the questions upon which the decision is here rendered as questions of fact and not of law, and consider that they were finally determined by the Appellate Court.