# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

### THE ILLINOIS CENTRAL RAILROAD COMPANY

#### *v.*

### JOHN SCHEFFNER.

*Opinion filed April 20, 1904.*

1. SPECIAL INTERROGATORIES—*when question is properly modified.* A special interrogatory to the jury, inquiring whether or not the defendant's servants were negligent in the manner in which they approached the crossing, "and if so, in what respect," is properly modified by striking out the words quoted.

2. SAME—*questions are not proper unless they bear upon the general verdict.* Special interrogatories are not proper unless some answer responsive thereto would be inconsistent with some general verdict that might be returned.

3. SAME—*question is improper which invites jury to find against an instruction.* A special interrogatory inquiring whether the defendant was negligent in not removing a bank of earth on its right of way near a highway crossing is properly refused, where the court has instructed the jury that no duty rested upon the defendant to remove the bank.

*Illinois Central Railroad Co.* v. *Scheffner,* 106 Ill. App. 344, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. JAMES S. BAUME, Judge, presiding.

This is an appeal from the Appellate Court for the Second District, which affirmed a judgment of the circuit court of Stephenson county for $2000 in favor of appellee, 'against appellant.   The suit was an action of trespass on the case, to recover for a personal injury alleged to have been received on account of negligence of appellant.   Upon a trial in the circuit court the jury found for appellee and assessed his damages at the amount above stated.   Motions for a new trial and in arrest of judgment were, respectively, overruled, after which judgment was rendered upon the verdict in favor of appellee.

It was stipulated by the parties to the suit that the portion of the railroad in question was constructed in 1887 by the Chicago, Madison and Northern Railroad Company and was leased to appellant in April, 1888.

The appellee received the injuries complained of at a crossing of this railroad and a public highway in Stephenson county on October 5, 1900.   The railroad track, which is a single track, runs east and west and the highway runs north and south.   The highway was located on the same line for a number of years prior to the construction of the railroad.   When the railroad was built the company made a cut at this place for its road-bed and excavated earth for a distance of several hundred feet west of the highway.   The testimony shows that this cut varies in depth, being 9.7 feet in depth at the crossing with the highway and 16.1 feet deep farther west.   West of the latter point the cut grows shallower until it comes to ·grade, and 475 feet west of the crossing is a bridge. At about 550 feet west of the crossing another cut begins, which runs on west about a half mile.   The railroad company also excavated the approaches of the highway to the crossing, both north and south of the track, making the track for travel in the highway 14 feet wide and the distance between the tops of the banks of the cut in the highway 39 feet.   Commencing at the crossing this excavation extends south in the highway for a distance of

200 feet.    The cut is about 10 feet deep next the track, and gradually slopes up to the natural level of the earth to the south.    A person traveling in an ordinary buggy, emerging from the cut in the highway from the south, can not see west past the bank until within about 30 feet of the track.

On October 5, 1900, appellee was driving a gentle horse in the highway towards this crossing, coming from the south.    When within about 80 rods of the crossing he saw a freight train pass at the crossing, going east.    Before entering the cut in the highway he looked east and west twice for smoke from an engine or other indications of trains, but saw none except the freight train traveling east from the crossing.    He entered the cut in the highway and proceeded north, his horse trotting, until his horse's head was within a few feet of the track, when a small car, propelled by a gasoline motor, and called a motor-car, upon which four officers or employees of appellant were riding, passed in front of him, going east. His horse jumped to the right, pulling the buggy into a small ditch, overturning it and throwing appellee out on the railroad track, from which he suffered severe injuries.

The platform of the car in question stood two feet above the track.    The seat extended eighteen inches higher.    On each corner of the car was a flag about two feet long and twenty inches wide,—two of them white and two green.    When the car crossed the highway these flags were unfurled.

The four officers of appellant above referred to testified that when within fifty or seventy-five feet of the highway the car was stopped, and one of them got upon the seat of the car and looked up and down the highway to see if anyone was coming; that this person reported that no one was in sight; that the car was then started, and was going at the rate of about five miles an hour when it crossed the highway.    The person referred to

as having looked for travelers in the highway testified that his height was five feet eight and one-half inches; that the seat of the car on which he stood was three feet and six inches above the track, and that he could see the surface of the highway for a considerable distance south of the cut in the highway, and there was no person in sight thereon at the time he looked.

Appellee testified that he heard no sound and received no warning of the approach of the car before his horse jumped to the right, overturning the buggy, and that he did not see the motor-car until just before it appeared in front of his horse, on account of the bank along the south side of the track.

At the close of plaintiff's case, and again at the conclusion of all the evidence, appellant moved the court to instruct the jury to find the issues for the defendant, at the same time offering an instruction to that effect. In each instance the court overruled the motion and refused the instruction.

J. H. Stearns, (William Barge, of counsel,) for appellant.

Burchard & Burrell, for appellee.

Mr. Justice Scott delivered the opinion of the court:

The appellant questions the sufficiency of the declaration by a motion in arrest of judgment. The first count in the declaration is, in substance, the same as that approved by this court in *Chicago City Railway Co. v. Jennings*, 157 Ill. 274, the only material difference being, that in that case it is charged that the negligence resulted in a collision, while here the averment is that the negligence resulted in frightening the horse, as a consequence of which the carriage was overturned and the plaintiff thrown out and injured. We are unable to perceive any distinction. The question is whether negligence is properly charged. Whether the statement of the negligence

be then followed by appropriate language showing that it resulted in a collision or in frightening the horse, and consequent injury to the driver, can make no difference in the legal sufficiency of the pleading. The first special finding shows that the defendant was found guilty of the negligence charged by the first count, and that stating a good cause of action, the motion in arrest was properly denied. It is unnecessary to determine whether the objections urged to other counts of the declaration are well taken. *Baltimore and Ohio Southwestern Railway Co.* v. *Alsop*, 176 Ill. 471.

At the close of the evidence of the plaintiff, and again at the close of all the evidence, defendant moved that the jury be instructed to return a verdict in its favor. This motion was overruled in both instances, and it is now urged that there was no evidence which, with the reasonable inferences to be drawn therefrom, warranted a verdict in favor of the plaintiff. In presenting this question counsel state that they are barred by the verdict of the jury and the finding of the Appellate Court from raising in this court the question whether appellant was guilty of negligence. This must be on the basis that there was some evidence tending to show negligence on the part of the railroad company; but it is urged that there is absolutely no proof tending to show appellee was in the exercise of ordinary care for his own safety.

"Although it is true that the question of contributory negligence is ordinarily a question for the jury, yet when there is no conflict in the evidence and the court can clearly see that the injury was the result of the negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant." *Beidler* v. *Branshaw*, 200 Ill. 425.

As the plaintiff approached the railway crossing from the south, according to his testimony, he observed a freight train passing east. After that, while he was three or four hundred feet from the railroad track, and

again as he started down the incline of the highway which leads to the track, he observed this freight train still going east, and looked to see whether any train was approaching from the west, and saw none. Looking westerly from the highway at the south end of the incline, the train, if it were approaching from the west, after passing into the cut about four hundred feet west of the crossing, would be only partially visible,—that is, the top of the smoke-stack of the engine and the tops of the higher cars, only, would project above the bank, except at the deepest part of the cut, where the engine and highest cars would be entirely hidden. The motor-car in that cut would be entirely invisible from this place of observation, and it appears that a train in the cut west of the bridge could not be seen from this point. Plaintiff was driving at the rate of five or six miles an hour. His horse was trotting. He did not slacken speed as he approached the track, and it is urged that this was contributory negligence. As the train going east had just passed, the jury might reasonably find that the exercise of ordinary care did not require plaintiff to guard against danger from that direction. He looked west as he started down the slope leading to the track and satisfied himself that there was no train approaching within a distance of several hundred feet from that direction. Danger of injury by ordinary locomotives or cars would then be lessened by hastening across the track. Such a course, it is true, disregarded the possibility of a collision with a car of the character of that which was then approaching from the west, but the danger from such a car is much less than that from an ordinary train, and its passage, ordinarily at least, is much less frequent. The course which plaintiff pursued was promotive of safety, so far as danger from the ordinary train or engine was concerned. The quicker he crossed the track the more speedily he would be entirely out of danger from any such train or engine approaching from a point beyond

the range of his vision west of the bridge, but this course was not promotive of safety so far as danger from cars of the character of this motor-car was concerned. Under such circumstances we think the evidence tended to show the exercise of due care, and the question was one for the jury.

Appellant requested the court to submit to the jury seven questions of fact, with directions to return special findings in response thereto. The third, fifth and sixth were submitted as requested.

The first inquired whether the servants of the defendant were negligent in the manner in which they approached the crossing in question with the motor-car, and "if so, in what respect." The court struck out the quoted language, which was proper, and the jury answered the question, so modified, in the affirmative. The material question under the first count of the declaration was whether the servants of the defendant approached the crossing with the motor-car in a negligent manner. If they did, and that negligence occasioned the injury while the plaintiff was in the exercise of due care for his safety, then the finding of the jury in response to the portion of the question stricken out would merely have been their statement of facts evidentiary of the ultimate fact—negligence.

The second and seventh questions, we think, related to immaterial facts,—that is, the general verdict would not have been in anywise affected no matter how those interrogatories had been answered had they been submitted to the jury. A special interrogatory of this character is not proper unless some answer responsive thereto would be inconsistent with some general verdict that might be returned, so that the court would be required to disregard such general verdict by virtue of section 58c of chapter 110 of Hurd's Revised Statutes of 1901, which provides: "When the special finding of fact is inconsistent with the general verdict, the former shall control the

latter and the court may render judgment accordingly." These two special interrogatories were properly refused. *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 Ill. 132; *Chicago Exchange Building Co.* v. *Nelson,* 197 id. 334.

The fourth was as follows: "Was the defendant negligent in not removing the bank of rock and earth on its right of way west of the highway in question?" One of the counts of the declaration charged the defendant with negligence in not removing this bank, and this interrogatory should have been submitted had the court not instructed the jury, on the part of the defendant, that no duty rested on the railroad company to remove this bank. When the jury had been so instructed there was no necessity for submitting an interrogatory which would merely have been an invitation to the jury to find against the instruction of the court.

In instructions numbered 8 and 9, asked by the defendant, the court struck out phrases which advised the jury that the defendant had the right to run the car "in the ordinary and usual method for operating and running such cars and machines." This so-called motor-car is one of a somewhat unusual kind. We do not think it in such common use that the court could, without any evidence on the subject, presume that any particular method was the ordinary and usual method of operating and running such cars, and in the absence of proof showing the ordinary and usual method the court should not have instructed the jury that the defendant had the right to follow such method.

We have carefully considered the instructions refused which were offered by appellant and to which our attention has been called by the brief and argument, and are of the opinion that in the refusal thereof no error was committed. The jury were fully and fairly instructed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*