A. P. Munsen, Appellant, v. The Illinois Northern Utilities Company, Appellee.

Gen. No. 8,213.

440

 Heard in this court at the May term, 1930. Opinion filed August 9, 1930.

RALPH ROSEN and HENRY C. WARNER, for appellant.

DIXON, DEVINE, BRACKEN & DIXON, for appellee; ROBERT L. BRACKEN, of counsel.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action on the case was instituted by appellant against appellee in the circuit court of Lee county to recover the amount paid by appellant to Kenneth Burrows, one of his employees, under the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.*

The declaration consisted of two counts. The first count averred that on April 4, 1927, Kenneth Burrows was employed as a common laborer, at a concrete bridge being constructed by appellant over the tracks of the Illinois Central Railroad Company; that on said date Burrows, appellant and appellee were all operating under the Workmen's Compensation Act; that appellee was in control of certain wires for the transmission of electricity, which were suspended from poles or steel towers; that said wires formed a continuous metal circuit over which electric current was transmitted, and passed directly over said bridge; that in the course of his employment, Burrows was lawfully upon said bridge "at a point directly under or near to a point directly under said wires which con-

stituted the transmission line hereinabove described''; that it was the duty of appellee to maintain said wires at a sufficient elevation so as not to endanger the lives of persons engaged in the construction of said bridge, ''but that the defendant maintained such wires in such close proximity to the bridge that said Kenneth Burrows, while standing on the floor of said bridge in the course of his duties as a laborer in the employ of said plaintiff in the construction of said bridge, and while he was in the exercise of all due care and caution for his own safety, struck one or more of said high voltage electric transmission wires with a steel reinforcing rod which he was handling in the course of his duties on the bridge, with the result that the electric current which was then passing through said wire or wires, left the same and passed through said steel bar, and through the hands, arms, body, legs and feet of the said Kenneth Burrows,'' by means whereof he was severely burned, etc.; that there was paid to Burrows a gross sum of $2,364.04 as compensation under the Workmen's Compensation Act, and in addition thereto there was expended on his behalf for medical, hospital bills and railroad fares, an additional sum of $299.61, etc.

The averments of the second count were substantially the same as the first, except it was averred that prior to the construction of said bridge appellee raised its wires to a height of, to wit, 13 feet above the floor of the bridge; that it was the duty of appellee to raise said wires to a greater height, but that it failed so to do, etc.

To said declaration, appellee filed a plea of the general issue. A jury was waived and a trial was had before the court, resulting in a finding and judgment in favor of appellee. To reverse said judgment, this appeal is prosecuted.

The record discloses that about August 1, 1926, appellant was engaged in the construction of a concrete

bridge over the Illinois Central Railroad tracks on Route 2 near Henkel, Illinois. Appellee owned and was in control of wires for the transmission of electricity, which crossed the east end of said bridge, and carried 33,000 volts of electricity. Some time near the latter part of August, 1926, when said bridge had reached its highest point, these transmission wires were approximately 11 feet above the floor of said bridge. At said time, appellant's foreman talked with a Mr. Saunders, appellee's line foreman and requested him to raise said wires. Shortly thereafter, said wires were raised some three to five feet.

Burrows had never been employed as an electrical lineman and had never worked for any concern which distributed electricity. At the time of the accident he was some 20 years of age. While the bridge was in course of construction, appellant's employees made use of two shacks. On the day in question, Burrows was ordered by appellant's foreman to put the shacks in shape. A stove had to be set up in one of the shacks, and the foreman instructed Burrows to go to the bridge and get a piece of steel reinforcing rod to hold up the elbow of the stove pipe. In this connection Burrows testified:

"The rods were near the east end of the bridge. . . . I pulled this bar straight back out of the bunch, pulled it towards me and worked it through my hands until I got to about the center of it, then I picked it up and set it down beside me, plumbed it beside me, one end setting on the concrete beside my foot. By plumbing it, I mean I had it standing straight up and down. My purpose in standing it straight up and down was so I could look at it and see how far above my head it was, so I could tell the length of it."

It was when this rod was so erected that the electric current passed through the same, burning and causing the injuries to Burrows involved herein.

The evidence discloses and it is conceded that, under the order of the Illinois State Highway Department, appellee was required to elevate its transmission wires, where the same crossed said bridge, to 22 feet above the floor thereof and that they were not so elevated. It is also practically conceded by counsel for appellee that, in failing to so elevate said wires, appellee was negligent. It is insisted, however, that such negligence was not the proximate cause of said injury, and that Burrows at the time and just prior to said injury, was not in the exercise of ordinary care for his own safety.

Four propositions of law submitted by appellant were refused. The one proposition submitted by appellee was marked held. The propositions ruled on required the court to determine whether the negligence of appellee proximately caused the injury to Burrows, and whether Burrows, just prior to and at the time of said injury, was in the exercise of due care.

Unless a party seeking to recover for an injury bases his action on a charge of wilful and wanton conduct, he cannot recover if he himself has been guilty of negligence which contributed to the injury. *West Chicago St. R. Co. v. Liderman,* 187 Ill. 463-468; *Wilson v. Illinois Cent. R. Co.,* 210 Ill. 603-606; *Chicago, W. & V. Coal Co. v. Moran,* 210 Ill. 9-17; *Krieger v. Aurora, E. & C. R. Co.,* 242 Ill. 544-547; *Carson, Pirie, Scott & Co. v. Chicago Rys. Co.,* 309 Ill. 346-352.

It is also fundamental that if the negligence of the party sought to be charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Hartnett v. Boston Store,* 265 Ill. 331-334; *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270-274.

An intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury, and itself becomes the direct and immediate cause of the injury. *Pullman Palace Car Co. v. Laack,* 143 Ill. 242–261; *Seith v. Commonwealth Electric Co.,* 241 Ill. 252–259, 260; *Illinois Cent. R. Co. v. Oswald, supra,* 274. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. *Phillabaum v. Lake Erie & W. R. Co.,* 315 Ill. 131–135, 136; *Illinois Cent. R. Co. v. Oswald, supra,* 274.

The burden of proof rested on appellant to show affirmatively: (1) That appellee was guilty of the negligence charged; (2) that such negligence was the proximate cause of the injury in question; (3) that just prior to and at the time of said injury Burrows was in the exercise of ordinary care for his own safety.

That appellee was negligent is conceded, but it is strenuously insisted that the evidence wholly fails to prove that such negligence was the proximate cause of said injury, or that Burrows, just prior to and at the time of said injury, was in the exercise of ordinary care for his own safety.

So far as the record discloses, the construction of said bridge was in no way interfered with or hindered by reason of the fact that said transmission wires had not been elevated as required by the State Highway Department. There was no causal connection between the placing of said shacks in repair and the height of said wires. Burrows was ordered by his foreman to go to said bridge and get a rod to be used in making stable said stove pipe. That, in doing so, he should place said rod in contact with said wires, would be improbable. We, therefore, hold that, under the authorities above cited, the evidence fails to support the second proposition.

That Burrows was thoroughly familiar with the height and location of said transmission wires across said bridge is disclosed by his own testimony. As to his purpose in standing said rod in a perpendicular position, he testified: "The only purpose for my putting the rod up in the air was to see how long it was; that was my way of measuring it; just ordinary judgment, was all."

We, therefore, hold that the evidence wholly fails to sustain the averment of due or ordinary care on the part of Burrows.

It was argued on behalf of appellant that Burrows was inexperienced in electrical work and should not be held to have been guilty of contributory negligence. In discussing a question of this character, the Supreme Court in *Austin v. Public Service Co.*, 299 Ill. 112, at page 120 says:

"The next question which presents itself for consideration is whether deceased was in the exercise of due care and caution for his own safety at the time of the injury which caused his death. He would have been 14 years old, had he lived until June 21, 1917. He was 4½ feet tall, and was normal physically and mentally. After he completed the sixth grade at school, he left school and went to work. Before the family came to Rockdale, to live, they had lived in Chicago, and while the family lived there deceased was employed in the sausage room of Armour & Co. . . . A boy 14 years old who has been raised in a city knows as well as a man that insulated wires carried upon poles are likely to be charged with a deadly load of electricity, and that it is not safe to touch them or go where he is likely to fall into them."

Under said holding of the Supreme Court, the contention of appellant is not sound.

Appellant's fourth proposition of law among other things stated that Kenneth Burrows "Immediately prior to the time of the accident in question, momen-

tarily overlooked or forgot the existence of the electric high tension wires of the Illinois Northern Utilities Company, through which an electric current of high voltage was passing, and such oversight or forgetfulness by him does not prevent a recovery by the plaintiff in this case."

In *Beidler v. Branshaw*, 200 Ill. 425, the court in discussing a question of this character, at page 431, says:

"In *Lovenguth v. City of Bloomington*, 71 Ill. 238, it is said: 'A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution.' . . . We are satisfied that the injury in this case was caused by the negligence of the deceased in standing so near the edge of the car that his heel was caught as the car passed the lintel in its ascent; that he knew the construction of the elevator shaft, and that the car in its ascent passed within a short distance of the lintel, and that it was without rail or guard on that side, and that he thoughtlessly stood upon the car in such a position that his heel was caught between the car and the lintel as the car passed that point, and that his negligence was of such a character as to prevent a recovery."

As stated, Burrows was thoroughly familiar with the location of said transmission wires, and the fact that he may have been momentarily unmindful of the same would not absolve him from the duty of observing due care for his own safety. The court did not err in refusing to hold said proposition.

Counsel for appellant cited cases from other jurisdictions which would have warranted a recovery. No case, however, from this State, either supreme or appellate, was cited which would warrant such recovery, and we are satisfied that none can be found.

For the reasons above set forth, the judgment of the trial court will be affirmed.

*Judgment affirmed.*