FRANK BRYAN, Plaintiff-Appellant, v. SHERMAN SWEENEY, Defendant-Respondent, No. 43140—256 S. W. (2d) 769.

Division One, March 9, 1953.

Motion for Rehearing or to Transfer to Banc Overruled, April 13, 1953.

*Douglas H. Jones* and *Jones, Connell & Jones* for plaintiff-appellant.

*Norris H. Allen* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for defendant-respondent.

CONKLING, J.—Frank Bryan, herein called plaintiff, sued Sherman Sweeney, herein called defendant, for $20,000 damages for alleged personal injuries claimed to have resulted from defendant's negligence. At the close of plaintiff's evidence and upon motion of defendant, the trial court directed the jury to return a verdict for defendant. Judgment was entered thereon. After proper procedural steps the plaintiff has appealed. The sole question for our ruling is whether upon all the evidence before us the case should have been submitted to the jury.

It is plaintiff's theory of his case that he was an employee of defendant in the doing of certain electrical work and in connecting certain electric wires at defendant's farm located in the State of Illinois; and that as a result of being furnished a wet ladder which was alleged to be unsafe because it was "a conductor of electricity"

plaintiff received an electrical shock, and because thereof was caused to fall from a pole where he was then at work connecting the secondary wires leading from defendant's house to other electric wires upon the pole where plaintiff was working.

Defendant pleaded and here contends that if any appliances or equipment which plaintiff may have used were in anywise defective or unsuitable that such condition or unsuitability, if any, was open and obvious [771] to plaintiff as an expert electrician, and that plaintiff was guilty of contributory negligence in using or attempting to use such appliances or equipment. Defendant also pleaded that the Illinois law is here applicable and that it is relied upon in this action. The nature of the question before us requires a detailed statement of the facts.

From the record before us it appears that plaintiff was and had been an electrician for 25 or more years, had owned and operated the Bryan Electric Company, had been an electrical contractor, took jobs to wire houses, and "had a lot of experience in electrical work," and held himself out to the public as being equipped and skilled to properly do electrical work. Plaintiff had known defendant about 20 years, having first known defendant when both were working at the Pierce Building in St. Louis. Defendant was then employed in the Pierce Building office and plaintiff was then the maintenance electrician of that building. Plaintiff lives in Missouri near St. Louis.

Prior to this accident on Sunday, May 15, 1949, defendant had been building a house on his farm. The wires carrying the electrical current had been run onto defendant's farm on a pole line and terminated at a pole about 25 feet from defendant's house. Upon that last mentioned pole the primary wires carrying 2300 volts came to the top of the pole and ran down the pole and into a transformer which reduced the current to 220-110 volts. The wires carrying only the latter mentioned voltage led down the pole from the bottom of the transformer to and through the meter near the ground, then back up the pole to certain insulators at a point below the transformer. Those wires were later to be there connected with the three secondary wires which were to be installed leading out from defendant's house.

Plaintiff testified that at the time of and before the accident he was regularly employed as a maintenance electrician at the Syndicate Trust office building in St. Louis; that in addition to his then regular work he also worked for friends doing wiring on Saturdays and Sundays to make extra money; that "the man that was doing Mr. Sweeney's (electrical) work (on the Sweeney farm) took sick, and Mr. Sweeney asked me if I would finish it for him, but there never was nothing said with Mr. Sweeney about pay * * * I expected him to pay me. * * * Mr. Sweeney asked if I would come over and complete the job, put in the necessary receptacles for the roughing in, so he could go ahead and have the lath and plaster put on. He

told me where he wanted the receptacles naturally''; that the first time he went to defendant's farm home, before the plaster and wallboard had been put on, plaintiff installed the wires in the house, the necessary Rumex and boxes; that about six weeks later he made a second trip to defendant's farm house and on that occasion ''put in switches, receptacles and hung the fixtures necessary''; that about three weeks later he made a third trip to defendant's farm, after defendant said ''it was ready to finish the job'';

That it was on that third trip that the accident occurred; that on each trip to defendant's farm the defendant drove plaintiff there in defendant's automobile; that on the occasion of the third trip to defendant's farm, plaintiff installed the main fuse box in the basement, installed the fuses and electric range connections, put the necessary pipe on the outside of the house, and installed the service; that the electric stove had a ''60 ampere service, 60 ampere fuses * * * you have to run larger wires, and you have to run 110-220 service for a stove * * * three wire service * * * the three hot wire is 220, but between the hot wire and the ground is 110 * * * only lighting is 110''; that then to connect the current from the distribution pole to the house, ''I had to run three wires from the pole to the house and connect it onto the wires on the pole.'' Plaintiff also testified that 220 volts is not dangerous; that ''I test it with my fingers all the time.''

The last thing plaintiff had to do to complete the job was to ''run three wires from the pole to the house and connect onto the wires on the pole'' which was about 25 feet from the house. That was done about 5:30 p.m. It had rained during the afternoon. [772] The soil around the pole was muddy. Plaintiff was not wearing gloves. Plaintiff asked defendant for a ladder, ''just told him (defendant) I wanted a ladder to get up on the pole.'' Defendant brought a wooden extension ladder which was placed against the pole at an angle.

Plaintiff testified: that his hands could have been wet when he first handled the ladder; that the ladder was wet; that there was nothing to keep him from seeing the condition of the ladder, ''I didn't pay too much attention, I was in kind of a hurry; Q. Well, if the ladder had been wet or anything like that, you used your hands climbing up that ladder, didn't you? A. Yes. Q. You put your hands, every time you took a step you grabbed hold of the ladder again? A. Oh, yes. Q. And if it had been wet or anything unusual about the ladder, you went up and down there several times, and also handling it, putting it up, you would have known it, wouldn't you? A. I didn't notice it, didn't pay that much attention, was in a hurry to get these up. * * * Q. And how wet (was the ladder) would you say? A. Now, the ladder was wet, you could see the water on it, if that is the way to put it. Q. Had you noticed that before you got on it? A. No, I hadn't noticed it or I wouldn't have

used it. Q. Why not? A. Water is a conductor of electricity. Q. And in your opinion was that what caused the short circuit? A. Yes, in my opinion. Q. What else besides the wet ladder, was the ground wet? A. The ground was very wet, it was muddy."

Plaintiff "anchored the three wires on the house and took them up to the distribution point on the pole." He had been up and down the ladder twice before the accident occurred. Plaintiff first went up the ladder and connected the middle (ground) wire; and he then again went up the ladder and connected the bottom wire. On the third trip up the ladder when he reached the point of his work plaintiff was reaching up to connect and tighten the top wire. The connections were being made by plaintiff by using a Kearney connector. That connector was slipped over the end of the wire on the pole side, the end of the wire coming from the house was then inserted in the connector, and a crescent wrench was used to tighten the nut to make a substantial connection. No soldering was necessary. All three of the connections to the pole were within a vertical space of 16 inches.

Plaintiff was working about 18 feet above the ground and his work was at about his eye level. He testified that his shirt had pulled out of his pants, and his right side just above his waistline was touching the ladder as he was "reaching up and (with his left hand) tightening this third Kearney connector, and I got a shock, and * * * fell. * * * at the time I didn't feel the burn. * * * Q. What caused you to get the shock? A. I don't know, it happened so quick I don't know." Plaintiff was pulling on the wrench and suddenly lost his footing. There was no spark or electrical flash. He fell off the ladder, landed on his feet, and fractured his right ankle and left foot. Plaintiff also testified he later found a spot "where the blood had drawed to the surface," where his body had been touching the ladder. There is no evidence in this record that plaintiff had any electrical burns upon his body anywhere.

Plaintiff's doctor testified: "Q. Now, did you find on Mr. Bryan's body any sign of any burn or scar on the right lower chest? A. You see, Mr. Bryan had fallen from this pole, and as I recall, in addition —his major injuries, the ones I was concerned with was the injury to the foot and the ankle, but he did have on the chest, he had an abrasion there, so we had to prescribe antiseptic ointment. It was just a scrape, you call it a floor burning, it wasn't a burn from a thermal sense, from a heating sense, but the skin was scraped off."

Plaintiff's theory of his case, in the trial court and here, is that the relationship between defendant and plaintiff was that of master and servant; and that the master [773] was under a nondelegable duty to furnish the servant with safe appliances and that defendant breached that duty by negligently furnishing a wet ladder. As to that matter defendant contends that these facts present not a master and servant relationship but establish that plaintiff was an independ-

ent contractor. Defendant argues that plaintiff was an expert electrician possessed of a superior knowledge and skill, in nowise subject to defendant's dictates as to how he should do the work and was following his own methods and devices. Defendant also contends that, in any event, plaintiff was guilty of contributory negligence which bars any recovery.

In view of the conclusion we have reached we deem it unnecessary to determine the legal relationship of these parties. We therefore assume, but do not rule or determine, that the relationship was that of master and servant. And even assuming (without deciding) that the relationship was as plaintiff contends, that of master and servant, and also assuming that defendant negligently furnished plaintiff a wet ladder, it is our conclusion that the court did not err in directing a verdict for defendant. We consider the question of whether plaintiff was contributorily negligent.

Plaintiff testified that the ladder was wet, that water is a conductor of electricity, that the wet ladder was the cause of plaintiff's electric shock and his fall, and that he would not have used the wet ladder if he had noticed it was wet. Plaintiff also testified that "you could see the water" on the ladder and that there was nothing to keep him from seeing the wet condition of the ladder. Plaintiff was an expert electrician of at least 25 years' experience in the handling of electricity and making electrical connections. He had known for more than 25 years of the dangers of handling electricity and that electricity would "short" if afforded opportunity.

Although plaintiff's right to recovery under these facts must be determined in the light of the applicable Illinois law, Tietsort v. Illinois Central R. Co., 322 Mo. 640, 15 S. W. (2) 779, 783, neither party has cited a single Illinois case. Some of the basic principles of the substantive Illinois law within which the instant contributory negligence question must be considered and ruled, disclose that unless plaintiff bases his right of recovery upon a charge of wilful and wanton conduct (and plaintiff does not here do so) he cannot recover if he himself has been guilty of negligence which contributed to his injury, Carson, Pirie, Scott & Co. v. Chicago Rys. Co., 309 Ill. 346, 352, 141 N. E. 172, Krieger v. Aurora E. & C. R. Co., 242 Ill. 544, 547, 90 N. E. 266, Munsen v. Illinois Northern Utilities Co., 258 Ill. App. 438; the obligation to exercise reasonable care is a duty which constantly attends every individual, Lasko v. Meier, 394 Ill. 71, 67 N. E. (2) 162; contributory negligence is want of ordinary care upon the part of the person injured by the actionable negligence of another combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, and without which the injury would not have occurred, Crawford v. C. & A. R. Co., 226 Ill. App. 138; one who knows and appreciates, or in the exercise of ordinary care should have known and appreciated, the existence of

danger from which injury might reasonably be anticipated, must exercise ordinary care to avoid such injury, Little v. Illinois Terminal, 320 Ill. App. 163, 50 N. E. (2) 123; a person in the exercise of ordinary care is charged with the duty of looking and seeing that which is obviously visible, and the law does not countenance the anomaly of a person professing to look and not seeing that which is clearly visible, Oran v. Kraft-Phenix Cheese Corp., 324 Ill. App. 463, 58 N. E. (2) 731, Sumner v. Griswold, 338 Ill. App. 190, 86 N.E. (2) 844; a person who looks but does not see what is plainly visible is negligent, Roy v. Chicago Motor Coach Co., 345 Ill. App. 296, 102 N. E. (2) 752; one may not knowingly expose himself to danger and then recover for injuries he could have avoided by exercising ordinary care, Ames v. Terminal Railroad, 332 Ill. App. 187, 75 N. E. (2) 42, Beidler v. Branshaw, 200 Ill. 425, 65 N.E. 1086; when and where one knows of a fact, that he may have momentarily overlooked or forgotten it, or may have been momentarily unmindful, and "hadn't noticed" does not relieve him from the constant duty to exercise [774] ordinary care for his own safety, Munsen v. Illinois Northern Utilities Co., supra; where danger is obvious to a person of ordinary intelligence the law charges him with knowledge of it, Shipley v. C. & A. R. Co., 164 Ill. App. 69. While the question of contributory negligence usually is one to be submitted to the jury under appropriate instructions, where the facts are not controverted and there is no room for a reasonable difference of opinion and where but one conclusion may be fairly drawn, the right of recovery is a question of law for the court to determine. Beidler v. Branshaw, supra.

Under these instant circumstances, plaintiff's own testimony declares his contributory negligence. Plaintiff testified the ladder was wet; that "you could see the water on it"; that there was nothing to keep him from seeing its wet condition; that water is a conductor of electricity; that the wet condition of the ladder "caused the short circuit" and his fall; and that he had not noticed that the ladder was wet, but "wouldn't have used it" *if* he had *noticed* it was wet.

Plaintiff was working without gloves and testified his hands could have been wet when he *first* handled the ladder. He twice went up and down the wet ladder each time placing his hands upon it. It was on his third successive trip on the wet ladder that the accident occurred. The law charges a person of plaintiff's unimpaired vision and broad experience and knowledge with knowing a condition, which, if he had used his sense of either vision or touch, or both, in the very nature of things he would have known. Plaintiff must be held to have been cognizant of his surroundings, and to have known the ladder was wet, for the law required him to take notice of such obvious conditions and dangers. In the performance of his work the law required plaintiff to keep in mind the operation of things known and familiar to him in his work and to govern himself accordingly. His

failure to do so made the risk his own. Plaintiff may not hold defendant liable for injuries resulting from a condition or danger of which plaintiff testified he himself knew and which was obvious and familiar and known to him.

Inasmuch as plaintiff would not have used the wet ladder if he had noticed it was wet, he may not under these circumstances now be heard to excuse that use by saying he did not notice it was wet. Knowing that water would conduct electricity, and having testified that water on the ladder was visible and "caused the short circuit," plaintiff's failure to *notice* the water under his hands and immediately before his eyes was clearly negligence which contributed to his injury. Stated conversely, the law charged plaintiff with the duty of seeing that which was visible and with responsibility for the use of the wet ladder under such circumstances. In the Illinois case of Munsen v. Illinois Northern Utilities Co., supra, a workman who knew and was thoroughly "familiar with the height and location" of transmission wires suspended above and crossing a bridge, stood on the bridge under the transmission wires and held a steel reinforcing rod upright and with the rod touched one of the transmission wires, and was thereby shocked and burned. It was there sought to excuse plaintiff's contributory negligence on the ground that he "momentarily overlooked or forgot the existence of the electric high tension wires" above the bridge. In denying the validity of that "excuse" of the workman, and in holding that his contributory negligence barred recovery, the Illinois court, in part, ruled the workman "was thoroughly familiar with the location of the transmission wires, and the fact that he may have been momentarily unmindful of the same would not absolve him from the duty of observing due care for his own safety."

A like situation was ruled in Ergo v. Merced Falls Gas and Electric Co., 161 Cal. 334, 119 Pac. 101, where a workman was installing some water pipes in a transformer house and knew that the wires at the south end of the house carried electricity and were dangerous, and for that reason he deemed it necessary to avoid the wires. While attaching the pipe he momentarily forgot about the wires and permitted the pipe in his hands to touch the electric wire whereby he was injured. In holding that his contributory negligence barred a recovery the Supreme Court of California, in [775] part, said: "There was no emergency or unexpected event at the moment of attaching the pipe to confuse or agitate him; no sudden necessity for haste or hurry in that particular operation, or at that moment, to distract his attention from the wires. He had them in mind the moment before, and avoided them. It is negligence for one thus to remember and avoid a known danger in one moment, and forget it the next, when nothing has happened to confuse or distract him, or cause such forgetfulness, except his own failure to exercise his memory."

·See also, Arkansas Power and Light Co. v. Hubbard, 181 Ark. 886, 28 S. W. (2) 710, In re Derbyshire's Estate, 306 Pa. 278, 159 Atl. 439, Dezelan v. Duquesne Light Co., 334 Pa. 246, 5 Atl. (2) 552, City of Owensboro v. Winfrey et al. (Ky.) 229 S. W. 135, Craft v. Fordson Coal Co. et al., 114 W. Va. 295, 171 S. E. 886, LeVonas v. Acme Paper Board Co., 184 Md. 16, 40 Atl. (2) 43, Coulon v. City of Alexandria (La.) 44 Sou. (2) 171, Gullett v. Ark. Power & Light Corpn., 208 Ark. 44, 184 S. W. (2) 819, Moore v. East St. Louis and S. Ry. Co., Mo. App., 54 S. W. (2) 771, 29 C. J. S., Electricity, § 53, and 18 Am. Juris., Electricity, §§ 75, 76.

Having the view that for the reasons above stated plaintiff's contributory negligence bars him from recovering in any event, it, is unnecessary for us to discuss any other question raised upon this appeal. The judgment of the circuit court is therefore affirmed. It is so ordered. All concur.