**ARKANSAS–MISSOURI POWER COMPANY, Appellant,**

v.

**Ray B. CARL, Appellee.**

**No. 16403.**

United States Court of Appeals
Eighth Circuit.

June 28, 1960.

**8**

James M. Reeves, Caruthersville, Mo., made oral argument for appellant.

Chas. W. Medley, Flat River, Mo., made oral argument for appellee.

Before SANBORN, MATTHES, and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

This is a diversity case in which plaintiff-appellee recovered a judgment based on a jury verdict, for $12,422.58, as damages for serious injuries he sustained as the result of coming in contact with wires charged with electric energy which were owned and maintained by defendant-appellant.

On this appeal, defendant does not attack the sufficiency of the evidence to support the jury's finding as to its negligence, but presents the sole contention that plaintiff was guilty of contributory negligence as a matter of law which bars his right to recover for the injuries he sustained. At the close of the whole case defendant moved the court for a directed verdict on the ground, inter alia, that the evidence required a finding that plaintiff was guilty of contributory negligence. The trial court reserved its ruling on this motion. Following the verdict, defendant filed motion for judgment n. o. v., which was premised in part on the same ground. Our résumé of the evidence will be limited to that which bears directly upon the conduct of plaintiff said by defendant to conclusively convict him of contributory negligence.

On December 27, 1956, plaintiff, a 68 year old stonemason in the employ of a building contractor, was engaged in the erection of a stone chimney in a cabin which was being constructed for the Y. M.C.A. near Sunnen Lake in Washington County, Missouri. At the time in question, the cabin was nearing completion, the roof was on and the stone chimney had progressed to the point where it was extending through an opening near the center of the roof. From the record, and photographic exhibits, it appears that the cabin, which faced south, had a gable-type roof; the front, or southern slope of the roof, rose to the north and partially extended over the rear or northern slope, for the purpose of accommodating two dormer windows. The chimney rose through this extended portion of the roof, between these two windows. Three horizontal wires, running in a general easterly-westerly direction, crossed over the roof, at a point immediately adjacent to, or partially over the chimney opening. The lower wire, which carried 120 volts of electricity, was approximately 30″ above the roof; the next, or middle wire, called a neutral wire, which was about 18″ above the first wire, carried no voltage; and the third, or top wire, approximately 18″ above the neutral wire, carried 7200 volts. The testimony varies as to the distance from the roof top to the top wire, plaintiff stating that it was

"five feet or better," but all witnesses agreed that "anyone could reach" the 7200 volt wire. These wires were covered with weather-proofing material, which had slight insulating value.

Testimony indicated that men working on the roof were obliged to "duck under" the wires upon trips across the roof, and it stands conceded that plaintiff had full knowledge, not only of the existence of the three wires, but also of the fact that it was perilous and dangerous to come in contact with them. His knowledge is pointed up by this portion of his testimony:

"A. I told them I was afraid of these wires. I am always afraid of electric wires.

"Q. And why are you afraid of them, Mr. Carl? A. Well, they got some juice in them.

"Q. And they can shock you, and they can kill you, can't they? A. Yes, sir."

Although a total of four or five members of the construction crew were on the roof at the time, none saw plaintiff as he came into contact with the wires. It appears that just prior to the accident, plaintiff, because of his fear of working under the wires, had requested some of his co-employees to move the wires upward so he could work with safety on the chimney. Two of these employees cut a notch in a 2 x 6 board or timber and attempted to raise the wires. Apparently the board was too long, and they turned towards the end of the roof. At that moment, according to witness Abney, plaintiff was standing approximately 5 feet from the wires. Abney then testified that immediately thereafter, while his back was toward plaintiff, he heard "the noise from the electric frying and popping," and turned to see plaintiff "just kind of slumping down on the wires." Although it is not entirely clear from the record just what portions

of plaintiff's body came into contact with the wires, it does appear that plaintiff suffered burns in the palm of his left hand and on the back of his right hand, and that Abney observed fire flying from his right hand.

Plaintiff's own testimony failed to indicate in what manner he came into contact with the wires:

"Q. Well, can you explain to this jury * * * how you got your hands in those wires? A. No, sir. I can't.

* * * * * *

"Q. Now, how close were you standing to the wires, Mr. Carl? A. I will say four or five feet.

"Q. And which direction from the fireplace were you standing? A. East, toward the lake.

* * * * * *

"Q. Will you tell this jury, Mr. Carl, what happened to the best of your knowledge when you were injured? A. The last I remember I just made a step back. I said 'be careful, boys.' The next I remember laying in the back seat of a car on the highway. From that on I am blank, I don't know no more."

The issue of contributory negligence was submitted to the jury by an appropriate instruction premised upon plaintiff's failure to exercise ordinary care in seeing and observing the electric wires, or upon plaintiff's negligence in coming in contact therewith with his hands. A verdict for defendant was authorized upon a finding of such negligence, together with a finding that such negligence directly caused or contributed to plaintiff's injuries.[1]

 In a recent case involving Missouri law, Kroger Co. v. Doane, 280 F. 2d 1, we observed that generally, "the existence of contributory negligence on the part of the injured person is a question of fact, or a mixed question of law

---

1. Defendant's liability was premised upon a finding that it failed to exercise the highest degree of care by failing to move the wires when it had notice that men working upon the cabin would be in dangerous proximity to these power lines. As stated, the element of defendant's negligence is not before us on this appeal.

and fact, for the determination of the jury." It becomes a question of law for the court when it is determined that reasonable men could not differ or reach different conclusions on the evidence viewed most favorably from plaintiff's standpoint. Kroger Co. v. Doane, supra; Losh v. Ozark Border Electric Cooperative, Mo.Sup., 330 S.W.2d 847, 851, 852, and cases cited. " * * * (P)laintiff's contributory negligence is for the jury unless reasonable minds can draw only the conclusion that plaintiff was negligent." Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, at page 500. In Missouri, the burden of proving plaintiff's contributory negligence is upon the defendant unless it be established as a matter of law by plaintiff's evidence. Thompson v. Byers Transp. Co., supra, 239 S.W.2d at page 499; Parsons v. Noel, Mo.Sup., 271 S.W.2d 543, at page 544; and cf. Empire District Electric Co. v. Rupert, 8 Cir., 199 F.2d 941, 945, certiorari denied 345 U.S. 909, 73 S.Ct. 649, 97 L.Ed. 1344. Also relevant here is the rule that "Whether one is guilty of contributory negligence depends upon the particular facts and circumstances surrounding the occurrence that caused the injury." Wilson v. Shumate, Mo.Sup., 296 S.W.2d 72, 76; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 515, 252 S.W.2d 295, 299.

Missouri courts have had occasion to consider numerous cases involving injuries and death from contact with electricity, commonly deemed a highly dangerous instrumentality. In the following reported cases the contention that the injured or deceased party was guilty of contributory negligence as a matter of law was upheld: Hamilton v. Laclede Electric Cooperative, Mo.Sup., 294 S.W. 2d 11; Coleman v. North Kansas City Electric Company, Mo.Sup., 298 S.W.2d 362; Morris v. Kansas City Light & Power Co., Mo.Sup., 302 Mo. 475, 258 S.W. 431 (en banc); Bryan v. Sweeney, 363 Mo. 1024, 256 S.W.2d 769 (applying Illinois law); Rosser v. City of Fayette, Mo.App., 235 S.W. 153, all cited by defendant to support its position, whereas, in the following cases, where the same contention was advanced, it was held that the question was one for the jury to resolve: Kessler v. West Missouri Power Co., 221 Mo.App. 644, 283 S.W. 705; Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960; Pulsifer v. City of Albany, 226 Mo.App. 529, 47 S.W.2d 233, overruled in part on other grounds, Reichholdt v. Union Electric Company, Mo.Sup., 329 S.W.2d 634, 639; Sanders v. City of Carthage, 330 Mo. 844, 51 S.W. 2d 529; Lebow v. Missouri Public Service Company, Mo.Sup., 270 S.W.2d 713; Gladden v. Missouri Public Service Company, Mo.Sup., 277 S.W.2d 510; Losh v. Ozark Border Electric Cooperative, Mo.Sup., 330 S.W.2d 847.

In particular, defendant relies upon the Missouri Supreme Court cases of Hamilton v. Laclede Electric Cooperative, and Coleman v. North Kansas City Electric Company, supra, and the federal cases of Hale v. Montana-Dakota Utilities Co., 8 Cir., 192 F.2d 274, and Stoffel v. New York, N. H. & H. R. Co., 2 Cir., 205 F.2d 411, certiorari denied, 346 U.S. 898, 74 S.Ct. 222, 98 L.Ed. 399, all holding that recovery was barred because of contributory negligence which appeared as a matter of law.

■ As a guide through these electricity cases, we find two essential factors which carry decisive weight in determining whether the injured person must be barred as a matter of law—the first is a finding of actual or constructive knowledge of the peril; and second, a finding of some *voluntary* act of the injured person which placed him in contact with the wire. Keeping these two factors in mind, the cases upon which defendant relies may be distinguished when the particular facts of each are considered. The Hamilton case involved the pulling of a metal pipe from a well; plaintiff and her husband raised it a distance of 24 or 25 feet above the hole in the roof of the well house and then permitted it to lean over so that it came in contact with nearby uninsulated wires of the power company, which were in plain view. The husband had worked for a utility com-

pany, and he and plaintiff knew electricity was dangerous, but according to their testimony they paid no attention to the wires when pulling the pipe. The basis for the holding in that case is pointed up in the opinion, at 294 S.W.2d at page 17: "There were no obstructions to their view of the poles and wires, which plaintiff stated were in 'plain sight.' Plaintiff and her husband knew that wires carrying electricity were dangerous. They say they did not see the wires; that they did not look. They in effect paid no attention to the wires. The evidence on behalf of plaintiff is that they took no precaution whatsoever."

In Coleman v. North Kansas City Electric Company, supra, plaintiff was an experienced electrician, and formed his own opinion that he could work from an obviously dangerous position atop an electric transformer and in such close proximity to high-tension wires that any movement on his part while pulling upon a block and tackle would necessarily be in the direction of the wires.

In Hale v. Montana-Dakota Utilities Co., supra [192 F.2d 278], applying South Dakota law, the plaintiff, a mature and intelligent young man, was familiar with the existence of the overhanging wires and knew they were conductors of electricity carrying high voltage. Nevertheless, while working as a member of a surveying crew, he pushed or raised his surveying rod into the wires "without making any effort to avoid such contact." This court held that apart from the fact that the evidence failed to show negligence on the part of the defendant utility company, plaintiff's failure "to take any precaution whatever" in raising the surveyor's rod into the electric wires, with full knowledge of their existence and the dangerous nature of electricity, convicted him of contributory negligence as a matter of law.

In the Stoffel case supra, the Second Circuit, in holding that plaintiff was contributorily negligent as a matter of law, remarked upon the obvious carelessness of plaintiff, 6' 2" tall, in rising from a kneeling position directly under a high

tension wire less than 6' from the top of his working area. Note this language, 205 F.2d loc. cit. 413: "While it is not negligent per se to work near a high tension wire, reasonable care must be exercised. There is no contention and no evidence that the contact with the wire came about in any way other than by the plaintiff's *voluntary movement* of his body." (Emphasis supplied.)

Our independent research has disclosed the latest Missouri case which considered the question, Losh v. Ozark Border Electric Cooperative, Mo.Sup., 330 S.W.2d 847, opinion filed January 11, 1960 (not cited by either party). In Losh, plaintiff's decedent was killed by electrocution while cutting an electric wire with uninsulated pliers, without rubber gloves, and while lying on damp ground. There, as here, the defendant urged the decedent was guilty of contributory negligence as a matter of law, and reliance was placed upon the Coleman and Hamilton cases, supra, as well as others. After the Coleman and Hamilton cases were distinguished, this contention was rejected, the court concluding that since there was no clear showing that plaintiff knowingly came into contact with a charged wire, the issue of contributory negligence was properly submitted to the jury. In disposing of the issue, the court stated, at page 852, "We must and do recognize the rule that where a person *intentionally* comes in contact with a charged electric wire, knowing (or having constructive knowledge) of its dangerous character, he is guilty of negligence as a matter of law. (Citing cases.)" (Emphasis supplied.)

While the Losh case is distinguishable in that here, Mr. Carl concededly had knowledge of the danger, it is clear that proof of such knowledge does not, per se, convict plaintiff of contributory negligence. In Lebow v. Missouri Public Service Company, supra, 270 S.W.2d 713, the decedent, an apple picker, with full knowledge of the presence of dangerous wires, jerked and pulled upon an aluminum ladder which was entangled in a tree in such a manner that it "unexpectedly"

rebounded, striking a nearby wire. The Court held that the question of contributory negligence was properly submitted to the jury, inasmuch as reasonable men might conclude that, under the circumstances, decedent had been in the exercise of ordinary care. See also and compare, Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, 968–970; Duke Power Co. v. Mullinax, 4 Cir., 214 F.2d 431, 434.

Further analysis of Missouri electricity cases would unduly prolong this opinion and serve no purpose except to demonstrate that resort must be had to the particular facts and circumstances surrounding each occurrence in order to reach a determination as to whether the injured or deceased party exercised that degree of care which was imposed upon him by law. It is sufficient to say that from our understanding of the law that has evolved from this type of litigation, the evidence herein falls far short of establishing that plaintiff's negligence was such as to bar him, as a matter of law, from recovering for the injuries he sustained.

■ The precise cause of plaintiff's becoming entangled in the wires does not appear—no one was observing him when the contact was made, and he has no recollection of what occurred after talking with his co-employees about removing the dangerous condition, at which time he was four or five feet removed from the wires. Defendant recognizes this hiatus in the evidence, when it states in its brief—"from this record it is somewhat of a mystery just how the plaintiff got his hands on these power lines." This is precisely the circumstance which is fatal to defendant's contention. Defendant argues that, nevertheless, "the fact remains that the plaintiff through some act of his own did get hold of these wires with his naked hands." This argument finds no support in logic or proof. Furthermore, such reasoning, in assuming that plaintiff was not in the exercise of ordinary care for his own safety, is contrary to the reasonable inference to be gathered from the evidence, and it is

hardly consistent with plaintiff's avowed knowledge of the existence of the wires and their danger and his fear of working near them. In contrast to defendant's cases which we have discussed, based upon facts which indicated marked failure to exercise even elementary precautions, the record before us discloses that plaintiff was exercising precaution to avoid the wires. As observed in Pulsifer v. City of Albany, supra, 47 S.W.2d at page 236, where there were no eyewitnesses to the occurrence: "It will not be presumed or inferred that the deceased voluntarily came in contact with the electric wire fully realizing its danger. It may as well be presumed that he intended suicide. * * * In the absence of the testimony of an eyewitness, the presumption would be that of due care and that the injury was the result of an accident." Under defendant's argument if plaintiff slipped while standing on the sloping roof, and instinctively or impulsively reached out with his arms to prevent a fall and thereby came in contact with the wires, he would nonetheless be guilty of negligence barring his recovery. Defendant's position comes down to the simple proposition that it was negligence per se for plaintiff to be working upon the roof in the vicinity of the wires. The Stoffel case, supra, relied upon by defendant, holds squarely that, although reasonable care must be exercised, it is not negligence per se to work near a high tension wire. The case of Thompson v. City of Lamar, supra, 17 S.W.2d 960, where plaintiff, while working on a roof near electric wires, was injured when a sudden gust of wind blew the wires against him, bears close factual resemblance to the situation before us. There, respecting the contention that plaintiff was contributorily negligent, the Missouri court observed, at page 969: "Plaintiff had the right to be at work upon the roof of the warehouse building and in close proximity to the wires."

■ Without further discussion, we are satisfied that reasonable men, in the exercise of fair judgment, might well infer from the facts here established that

plaintiff involuntarily or impulsively came into contact with the wires, perhaps to escape a fall, and so conclude that plaintiff was in the exercise of ordinary care for his own safety immediately before and at the time he became entangled in the wires. In our opinion, the facts found in Losh v. Ozark Border Electric Cooperative, supra, Thompson v. City of Lamar, supra, and Lebow v. Missouri Public Service Corporation, all of which held that there was no contributory negligence as a matter of law, were much more indicative of contributory negligence than are those before us bearing upon the conduct of plaintiff.

We hold that the District Court, in ruling that the plaintiff was not guilty of contributory negligence as a matter of Missouri law and that the issue was for the jury, reached a permissible conclusion.

Affirmed.