# CHANDLER v. KANSAS CITY MISSOURI GAS COMPANY, Appellant.

## Division One, April 1, 1903.

1. **Negligence:** WHEN DEMURRER SHOULD BE SUSTAINED. In a suit for personal injuries charged to have resulted from defendant's negligence the court should sustain a demurrer to the evidence if there is no evidence tending to show any negligence on the part of defendant.

2. ————: THINGS "LIABLE TO HAPPEN:" INSTRUCTION. The court instructed the jury that there was no evidence that defendant knew or could have known by the exercise of ordinary care before the accident occurred, that the hole into which plaintiff fell had been dug in defendant's dumpyard by one licensed to haul away cinders, but also told them to find plaintiff guilty of negligence if a reasonably careful and prudent man might have known that the persons hauling the cinders were liable to dig the hole. *Held*, error, since this last instruction, in view of the other, placed upon defendant the duty of using the utmost vigilance and precaution, whereas the law only requires him to use ordinary care in forecasting the actions of others.

3. ————: ————: SAFE APPLIANCES: FALLING IN EXCAVATION MADE BY LICENSEE. The defendant gas company had constructed a frame four or five feet high, with horizontal sills, on which it placed iron rails and ran on them its car which bore away the cinders from its gas factory, and had given to purchasers of the cinders the privilege of loading their wagons from the furthest end of the dump, and several wagons for some time had hauled loads from there, the driver of a lumber company among others, and one evening his team refusing to pull a load from there, he emptied his wagon and went, just before dark, about sixty feet up the dump and filled his wagon with cinders from under the track, digging a hole four feet deep and six feet long, and plaintiff, an employee of the gas company, coming with his cinder car about an hour later fell through the track into the hole, and was injured, the cinders everywhere else along the track being up to the frame and jutting out over its sides. Neither plaintiff nor any of defendant's employees knew that the hole had been dug, nor had the driver or any other hauler been given the privilege of hauling cinders from any part of the dump except its furthest end, nor was there any evidence that defendant or any of its employees knew that they had ever been hauled from any other part of the dump, if in fact that had ever been done. *Held*, the defendant was not liable for plaintiff's injuries.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED.

*Gage, Ladd & Small* for appellant.

(1) A master is not bound to furnish an absolutely safe place for his servant to work, but only to exercise reasonable care to do so. He is, therefore, not an insurer of his servant against defects in the place where he works, nor liable as such, but is only liable, it being in safe condition in the first place, for negligently permitting it to become defective, or negligently failing to repair it. Krampe v. Brewing Co., 59 Mo. App. 277; Devlin v. Railroad, 87 Mo. 545; Higgins v. Railroad, 43 Mo. App. 547; Gutridge v. Railroad, 105 Mo. 529; Siela v. Railroad, 82 Mo. 430; Covey v. Railroad, 86 Mo. 635; O'Donnell v. Baum, 38 Mo. App. 245; Blanton v. Dold, 109 Mo. 64; Brown v. Land & Lumber Co., 65 Mo. App. 162; Marshall v. Hay Press Co., 69 Mo. App. 256; Friel v. Railroad, 115 Mo. 503. (2) The evidence of both plaintiff and defendant shows affirmatively that this cinder track was in perfectly safe condition until Knight made this excavation in it, and that no one connected with the defendant—much less any of its officers, superintendents or foremen—knew anything about this excavation into which the plaintiff fell and was injured, until after the accident, and the same having been made after sunset, just about dark on a very cloudy, foggy night, and only an hour and a half before plaintiff's injury, in an out of the way place—a place outside the fence enclosing defendant's works and across the street and railroad tracks therefrom and unfrequented by anyone except the plaintiff—there was no evidence that defendant should, by the exercise of ordinary care, have discovered the existence of the pit prior to the accident, and

the court so instructed the jury.   There was, therefore, no evidence of negligence on defendant's part, and no case to go to the jury, and defendant's demurrers to the evidence should have been given.   Burnes v. Railroad, 129 Mo. 41; Goodrich v. Railroad, 152 Mo. 223; Railroad v. Swartz, 48 Pac. 954; Raymond v. Keseberg, 64 N. W. 861; Frassi v. McDonald, 55 Pac. 139; Clapp v. LaGrill, 52 S. W. 134, 103 Tenn. 164; Clough v. Hoffman, 132 Pa. St. 626; Harrison v. Collins, 86 Pa. St. 153.

*Scarritt, Griffith & Jones* for respondent.

Plaintiff's first instruction correctly states the law concerning the obligation of defendant to plaintiff under the circumstances of this case.   This instruction required the jury to find, precedent to a verdict for the plaintiff, that defendant authorized Frank Knight to take and carry away cinders from the vicinity of the cinder track, and that in giving such authority defendant knew, or, as a reasonably careful and prudent person, might have known, that in so doing he would be liable to excavate near or under the cinder track and render plaintiff's pathway used for pushing cinder cars along that track unsafe and dangerous.   The fundamental obligation, the violation of which is the foundation of this action, is that the employer should furnish and maintain a reasonably safe place for his servant while at work.   This duty imposed by law is a positive continuing and personal duty.   20 Am. and Eng. Ency. Law (2 Ed.), p. 55; S. P. Co. v. Lafferty, 57 Fed. 539; Golden v. City of Clinton, 54 Mo. App. 100; Smith v. St. Joseph, 42 Mo. App. 392; Birmingham v. McCrary, 84 Ala. 469, 4 So. 630; Stephens v. City of Macon, 83 Mo. 345; 2 Dill. Mun. Corp. (3 Ed.), p. 1025; District of Columbia v. Woodbury, 136 U. S. 450; Hoyer v. Tonawanda, 79 Hun 39; Railroad v. Mayes, 49 Ga. 355; Bridge Co. v. Steinbrock, 61 Oh.

St. 215, 76 Am. St. 375; St. Paul v. Seitz, 3 Minn. 297, 74 Am. Dec. 753.

VALLIANT, J.—Action for damages for personal injuries sustained by plaintiff while in the service of defendant and which plaintiff alleges were the result of defendant's negligence.

Defendant is a manufacturer of illuminating gas, having several factories in Kansas City near the intersection of Front and Harrison streets, one of which is on the south side of Front street and another one on the north side. There is an ashpit in the basement of the latter, into which cinders and ashes are deposited and thence removed in a car up an incline to a point about thirty-five feet east of the factory, from which point the car is pushed by hand down an incline to a track along a level, on which it is further pushed by hand eastward eighty or a hundred feet, where the ashes and cinders are dumped, and the car is then returned to the ashpit for another load. The business was so extensive that the ashpit had to be cleaned out three times a day, and five carloads containing a cubic yard each were taken out at each cleaning. The cinders were being used by the defendant to raise the surface of the ground in front of the factory. The track along which the car was pushed was made of iron rails laid on longitudinal sills elevated four to six feet above the natural surface of the ground, but at the time of this accident the process of filling had progressed so far that the space under the track and on both sides to a considerable distance north and south had been filled with cinders and leveled. The process of filling was being extended eastward and when the ground at the end of the track was filled and leveled north and south as far as desired, the track would be extended further east to continue the process. The plan of the defendant was to use the cinders from this factory for this filling purpose. But the factory south of Front

street produced cinders in considerable quantity, also, which were not so convenient to dispose of, and those cinders the defendant sold to concerns in the vicinity who hauled them away in wagons and used them for filling up low grounds of their own. It sometimes occurred that there was not enough cinder output from this south factory to meet the demand, and when that was the case the defendant allowed the wagons to take cinders from the north side. To do this the usual course was for the wagons to go to the east end of the track above described and take the cinders from the dump.

Among the concerns hauling cinders from these gas works was a lumber company whose driver was named Knight. He had been hauling there a considerable time, usually getting his loads from the south factory, but also when there were no cinders there, getting them from this dump. He was so engaged on December 27, 1899; he had hauled one load from the dump in the afternoon of that day, and returned about five o'clock for another. He loaded his wagon at the dump, but he experienced some difficulty in hauling it from that point, and thereupon he threw out the load he had taken, and drove his empty wagon west along the north side of the track about sixty feet from the dump, and there stopped and filled his wagon with cinders which he dug out from the side and under the track, making a hole or pit under the track about four feet deep and six feet long. It was about half past five o'clock when he did this and it was just about dark. No one saw him do it. He drove away in the dark, leaving the hole as he had dug it.

Plaintiff was in the service of the defendant as a common laborer. Cleaning out the ashpit and pushing and dumping that cinder car were not his regular duties, but he was frequently called on to do it and was familiar with the work. He had made several trips with the car on the day in question, when he was or-

dered to another part of the works on some duty and was to return to the cinder pit at six o'clock to clean it out. He did so, and passing along the south side, pushed a car of cinders out to the end of the track and dumped it, then returning, walking in the track, pushing the car, he fell into the hole which Knight, the driver of the lumber company, had recently made as above mentioned, and received severe injuries.

Knight, as a witness for plaintiff, testified that the orders from the defendant's man to him were to haul cinders from the south side, but when there were no cinders there, for accommodation, he could go on the north side and get them, and he did so, and as did also other haulers, all of whom usually went to the end of the dump for their loads. The witness, in undertaking to tell what orders he had from the defendant's superintendent as to where he could take cinders from, used this expression, ''We could get them where we pleased, and all we had to do was to come to the office and pay for them.'' But on the further examination, he said that no one pointed out to him where he was to get the cinders except that he was told he could go over to the north side and get them.

''Q. But you went over there and took them from the end of the dump for several days. A. Yes, sir.

''Q. And you saw others taking them from the end of the dump? A. Yes, sir.

''Q. That was the place where it would do no injury to the track, was it not? A. Yes, sir.

''Q. On this occasion you had a team of young mules that did not work very well, or at least got stuck with a load in the hole at the end of the dump, and you then unloaded and drove up and made this excavation under the track? A. Yes, sir.

''Q. Without any authorization from anybody connected with the gas company? A. Yes, sir.''

And on further examination by plaintiff's attorney:

"Q.    And he told you that when the cinders gave out at the south dump to go over to the north dump where the cinder track was and get them wherever you pleased?    A.    No, sir, he did not.

"Q.    You disobeyed his instructions?    A.    He did not tell me I could get them wherever I pleased; he told me I could go around there and get my load.'"

The evidence showed that the ground along this track which had been raised by the deposit of cinders was leveled off and used for storing gas pipe by defendant.

The evidence for the defendant was to the effect that the men hauling cinders were directed to get them from the south side, but when there were no cinders there they were told that they might go to the end of the dump on the north side and get them, and the defendant never knew that any cinders were taken from the north side except from the end of the dump.    Defendant knew nothing of this hole that Knight dug in the track until after the accident, which happened about an hour after the hole was dug.    It was after dark and no one in the employ of defendant had occasion to go out there, except the man who pushed the cinder car.

At the close of the plaintiff's evidence the defendant requested an instruction to the effect that the plaintiff was not entitled to recover, which the court refused and defendant excepted.

The case was given to the jury under an instruction that declared the defendant liable if the defendant authorized Knight and others to take cinders from the vicinity of the cinder track and in doing so "the defendant knew or as a reasonably careful and prudent person might have known that in doing so  said persons would be liable to excavate cinders near or under said cinder track," etc.

And at the request of the defendant the court instructed the jury that there was no evidence that defendant or any of its agents "knew or by the exercise

of ordinary care might have discovered before the plaintiff was injured'' that the excavation had been made.

There was a verdict and judgment for plaintiff for $7,500, from which defendant appeals.

The court should have given the instruction asked by the defendant in the nature of a demurrer to the evidence. There was no evidence tending to show any negligence on the part of defendant. The court correctly instructed the jury that there was no evidence that defendant knew or could have known by the exercise of ordinary care that the hole had been dug in the track before the accident occurred, yet an instruction given at the request of plaintiff authorized the jury to convict the defendant of negligence if a reasonably careful and prudent person might have known that the persons hauling the cinders were liable to dig them out from under the track.

On that theory the defendant under the circumstances in the case would not be a reasonably careful and prudent person if, in granting permission to the men to haul cinders from the end of the dump, it trusted that they, in availing themselves of the permission, would act as reasonable men usually act under like conditions, or that they would at least refrain from acts of willful wrongdoing. Such a rule of law would impose on one in defendant's position the duty of exercising the utmost care which distrust could suggest and unceasing vigilance. Ordinary business could not advance under such a rule.

The learned counsel for respondent in their brief say: ''It is a far call from the *certainty* that a thing is to happen, to the bare possibility that the thing is to happen.'' All the shades of difference between the certainty and the bare possibility there referred to are covered when we say that the thing is liable to happen. It may be probable or improbable, a reasonable or an unreasonable expectation, yet if it may possibly occur

it is liable to occur. These men, permitted to enter defendant's premises and load their wagons with cinders, were liable to do just what this man did, more liable, perhaps, to do so when as in this case darkness assisted him, but the fact is that although a number of men from different concerns, this man among them, had been hauling cinders from there for a considerable time, no one had ever done such a thing before, and there is nothing to suggest that such a thing was at all likely to occur. The utmost caution that distrust of mankind could suggest might possibly have anticipated it, and unceasing vigilance have prevented it, but the law required of defendant no such degree of caution and no such vigilance. Reasonable care is all that the law demands. In Fuchs v. St. Louis, 167 Mo. 620, l. c. 646, this court per TITTMANN, J., quotes with approval Ray on Negligence, pp. 133, 134: "A reasonable man does not consult his imagination, but can be guided only by a reasonable estimate of probabilities. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what his reason and experience will enable him to forecast as probable, nor conduct, on a basis of bare chance, a business whose success is dependent upon his accuracy in forecasting the future. He will order his precaution by the measure of what appears likely in the usual course of things."

Reference is also made in that opinion to Webb's Pollock on Torts (Enlarged Am. Ed.), pp. 45-6, from which is quoted: "This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in defendant's place should have foreseen as likely to happen, there is no wrong and no liability." [See also Beasley v. Transfer Co., 148 Mo. 413; and Stone v. Railroad, 171 Mass. 536.] Applying the law as above quoted (with the statement of which we are entirely satisfied) to the

facts of this case, even as made out by the plaintiff's evidence alone there is nothing to show a neglect of duty on the part of the defendant and nothing to render it liable. True, the witness Knight said he could get cinders from where he chose, but when questioned on that point he said that no one had told him he could do so, and he knew that the place they were expected to get their loads from was at the end of the dump. He also said that he had before taken cinders from the side of the track, but he was very indefinite on that point, and if he did so there is nothing to show that defendant knew it. The formation of the raised surface of the ground and its obvious use showed to any reasonable man that defendant would not knowingly allow a pit to be dug under the track as was done. The evidence of defendant was explicit that the men were ordered to get the cinders from the end of the dump, and that so far as defendant knew or could reasonably have known that was done. The evidence of plaintiff, though not so explicit, is yet practically to the same effect.

The instruction asked by the defendant in the nature of a demurrer to the evidence should have been given.

The judgment is reversed. All concur.