Joan LEBOW, Plaintiff-Respondent,

v.

MISSOURI PUBLIC SERVICE COMPANY,
a corporation, Defendant-Appellant.

No. 43967.

Supreme Court of Missouri.

Division No. 1.

Sept. 13, 1954.

Poague, Poague & Brock, Barkley M. Brock, Clinton, Morrison, Hecker, Buck, Cozad & Rogers, William H. Curtis, Karl F. Schmidt, John R. Gibson, Kansas City, for appellant.

Delton L. Houtchens, Clinton, for respondent.

COIL, Commissioner.

Plaintiff-respondent (herein called plaintiff) recovered $15,000 damages for the alleged wrongful death of her husband who was killed when an aluminum ladder he was using to pick apples came in contact with a 6900 K. V. electric line owned by defendant-appellant (herein called defendant).

Defendant contends on its appeal: that it was not negligent; that plaintiff's decedent was contributorily negligent as a matter of law; and that the trial court erred in giving instructions.

■ In considering the questions of negligence and contributory negligence, we view the evidence from a standpoint favorable to plaintiff, give plaintiff the benefit of all reasonable inferences therefrom, give plaintiff the benefit of any of defendant's evidence favorable to plaintiff and not contrary to the fundamental theory of her case, and disregard defendant's evidence unfavorable to plaintiff. We so state the evidence.

Harry Hoover and another (herein called Hoover) owned and operated a 138-acre apple orchard near Sibley, Missouri, which they acquired in December 1946. A 6900 K. V. electric line owned by defendant served the public in the general area. A private 2-wire spur line ran from the main line into and partially through the apple orchard to a transformer near a pump house therein where the voltage was reduced from 6900 to 220. The current furnished by the private line was used solely by Hoover to operate a pump used in orchard operations and for lights and appliances in Hoover's nearby tenant house. The 6900-volt line was uninsulated. The 220-volt line was insulated. No relationship existed between defendant and Hoover except that of supplier and consumer.

The orchard had been in existence for many years. The power line had been there for at least 22 years and had remained in the same condition and position as it was at accident time for at least 5 or 6 years. Defendant's electrical engineer, who had been with defendant since 1937, while not personally familiar with the details of the power line, had "seen it sometimes over the years". The wires were on poles about 20 feet high and, at the place of the accident, equidistant between two rows of apple trees. The line was slightly higher than the 18-foot apple tree which deceased was picking at the time of the casualty. It was 12 or 15 feet from the base of the tree horizontally to a place directly under the wire nearest the tree.

The limbs of the tree extended 5 or 6 feet beyond the tree's base. Aluminum ladders had been used by Hoover for 4 or 5 years preceding the casualty. Some wood ladders were also used. The aluminum ladder used by plaintiff's decedent (herein sometimes called Gerald) was about .6 inches shorter than the height of the wires (i. e., as we understand, when the ladder was in a perpendicular position directly under the wires).

Gerald Lebow, plaintiff's husband, had picked apples for Hoover for parts of three or four prior seasons. He and plaintiff were employed by Hoover on September 15, 1952. Hoover gave Gerald an aluminum ladder and a sack. The next morning a wood ladder was furnished to plaintiff. Plaintiff and Gerald picked apples on September 15 without incident. During the morning of September 16 they reached a certain tree in the course of their work. The tree was one that they could properly choose to be next picked. It was in the row of trees immediately west of the power line. Gerald picked the west side of the tree, moved his ladder and completed the east side, after which he conversed with plaintiff for a few minutes about the money they had made during the morning. Gerald then attempted to move the aluminum ladder so that he could pick the south side of the tree. He had placed the ladder on the east side in the usual manner, that is, by placing it against and among the branches (not against any particular limb) with the base of the ladder about 5 or 6 feet east of the base of the tree. The ladder had become entangled in some of the branches and to disengage the ladder required three or four pulls. On the last pull, the ladder came loose and went eastwardly and up against the power line. Gerald fell to the ground with the ladder on top of him. He died within a few minutes.

Sometime during the morning of the fatal accident the foreman had told the apple pickers, including Gerald: "Now, there is an electric line down there"—"Watch out when you go under it"—"All of you watch out when you go down there,

there is a live wire down there." When Gerald was picking the west side of the tree in question, another employee started to walk under the power line with a ladder and said to deceased: "Gerald, can I do this without touching the wire?" Gerald answered, "Yes." The employee then turned to another apple picker in the vicinity and asked the same question, whereupon Gerald said to the questioner, "You don't think I would try to electrocute you, do you, Sam?" This incident occurred 15 or 20 minutes before the accident.

■ Suppliers of electricity must exercise the highest degree of care to keep their wires in such condition as to prevent injury to others who lawfully may be in close proximity to those wires. Smith v. Southwest Missouri R. Co., 333 Mo. 314, 320[1], 62 S.W.2d 761, 763[2–4]; Thornton v. Union Electric Light & Power Co., 230 Mo.App. 637, 644, 72 S.W.2d 161, 164 [4]. Of course, as defendant points out, this duty did not make instant defendant an insurer of the safety of all persons. But defendant was required to use the highest degree of care to prevent injury which it could reasonably anticipate. It was not necessary, however, that defendant should have anticipated the exact injury which did occur or the exact manner in which the injury occurred. It was sufficient that a jury reasonably could find that defendant reasonably should have anticipated that some injury was likely to occur to one lawfully at or near the tree in question by reason of the presence of the line in its particular location. Thornton v. Union Electric Light & Power Co., supra, 72 S.W.2d 163[1–3].

■ We are of the opinion that under the evidence set forth a jury reasonably could find that defendant's power line had been in the same location and condition sufficiently long prior to the accident to have charged defendant with notice of the fact that its uninsulated power line ran in close proximity to apple trees in a commercial orchard which were annually picked by employees of Hoover (defendant's customer) by means of ladders; that defendant

should, in the exercise of proper care, have reasonably anticipated that injury was likely to result to an apple picker working at the tree by reason of its proximity to the uninsulated power line, which the jury could find was not maintained sufficiently high to afford safe clearance for those working at the tree, and that Gerald was lawfully present in close proximity to the wire in the course of his employment. Schneiter v. City of Chillicothe, 232 Mo.App. 338, 348 [7], 107 S.W.2d 112, 118[11]; Thornton v. Union Electric Light & Power Co., supra, 72 S.W.2d 164[5–7]; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 674, 73 S.W. 654, 659; Byerly v. Consolidated Light, Power & Ice Co., 130 Mo.App. 593, 600, 601, 109 S.W. 1065, 1066.

█ It is true, as defendant suggests, that there was no evidence that it had actual notice that aluminum ladders were being used. In our view, however, defendant, in discharging its duty to Hoover's employees, could not assume that Hoover would furnish ladders so constructed and so maintained as to assure against the conduction of current when they came in contact with a 6900-volt line. Hoover may have been guilty of a negligent breach of his duty to furnish Gerald a reasonably safe place in which, or reasonably safe tools with which, to work. If so, his negligence concurred with defendant's negligence and would not absolve defendant. Byerly v. Consolidated Light, Power & Ice Co., supra, 109 S.W. 1067.

█ Was plaintiff's decedent guilty of contributory negligence as a matter of law? We think not. Plaintiff's decedent had full knowledge of the existence and of the location of the power line, was fully aware of its danger, and particularly aware of his danger if the aluminum ladder came in contact with the wires. However, the jury reasonably could find from all the evidence that, in pulling the ladder loose from the entangling branches, it unexpectedly went back over Gerald's head into the wires. (While plaintiff testified at one time that she did not think the base of the ladder left the ground as her husband was pulling it loose from the tree, the jury nevertheless could find that the base of the ladder did leave the ground and, in fact, had to leave the ground in order to come in contact with the power line.) Now, while deceased knew of the location of the power line, knew that it was a few feet to the east of the tree upon which he was working, and knew that he had to exercise care to prevent the aluminum ladder from coming in contact with the wires, nevertheless, we may not say as a matter of law that deceased knew or should have known that the ladder was entangled in the branches to such an extent that pulling with sufficient force to disentangle it would be likely to cause the light aluminum ladder to go back over his head and into the wires. Gerald had placed the ladder against the tree in the usual manner. If the base of the ladder had remained on the ground 5 or 6 feet from the base of the tree as he pulled it backwardly from the tree, the ladder could not have struck the wires. (This assumes, of course, that the ground level was no higher near the tree than under the wires. There was no testimony that the ground was higher 5 or 6 feet from the base of the tree than it was under the wires. One of plaintiff's photographs may show that it was, but in the absence of testimony relating to that feature of the photograph, we are unable to reach such a conclusion from the exhibit alone.) Thus, it was the fact that the pull was sufficient to cause the light ladder to leave the ground and go over Gerald's head that caused the injury. There was no evidence that Gerald had had, or had knowledge of, any similar prior experience in the use of aluminum ladders. Nor was there evidence, by which plaintiff was bound, to the effect that Gerald was warned that in pulling an aluminum ladder away from entangling branches it was likely that a forceful pull would cause the base of the ladder to leave the ground. In brief, we may not say as a matter of law that Gerald must have known that a particular pull on an aluminum ladder, placed as his ladder was, would cause its base to leave the ground and cause the ladder to suddenly go backward over his head. It

should be noted that decedent was not injured while he was in the tree picking apples. Nor was he injured while using a stick or an appliance which, in an attempt to reach some apples difficult to reach, came in direct contact with the wires. Nor was he injured by permitting the ladder to come in contact with the wires while carrying it under the power line. On the contrary, plaintiff's decedent in the course of his employment was lawfully present at a place in close proximity to the wires, attempting to do the thing which it was necessary for him to do in order to discharge his duties as an apple picker.

The evidence was such that a jury reasonably could have found that decedent was guilty of negligence which barred plaintiff's recovery. The jury reasonably could have found that Gerald failed to exercise ordinary care for his own safety commensurate with all the facts and circumstances in evidence. We may not say, however, that reasonable men might not fairly reach different conclusions on the evidence viewed most favorably from plaintiff's standpoint. We, therefore, may not declare as a matter of law that plaintiff's decedent was guilty of contributory negligence. We are of the opinion that the trial court properly left that question to the jury. Thompson v. City of Lamar, 322 Mo. 514, 534, 17 S.W.2d 960, 968[4].

Defendant has cited a number of cases to support his contention that plaintiff was guilty of contributory negligence as a matter of law. We have examined all of these cases (many of them from other jurisdictions) and we are convinced that all of them are distinguishable upon their particular facts. We specifically note the first three cases listed in defendant's brief—those principally relied on. 42 V.A.M.S. Supreme Court Rule 1.08(a) (3).

In Bryan v. Sweeney, 363 Mo. 1024, 256 S.W.2d 769, this court held that under the law of Illinois, plaintiff, an experienced electrician, who contended that an employer had furnished him a wet ladder with which to make an electrical connection in close proximity to a 2300-volt primary wire, was guilty of contributory negligence as a matter of law. This court, assuming the existence of a master-servant relation, held that the wet condition of the ladder was bound to have been obvious to plaintiff; that plaintiff was bound to have used his senses of vision and touch; was bound to have seen and known that he was using a wet ladder which he knew to be dangerous; and that he could not excuse his conduct by saying that he did not notice that the ladder was wet or by his momentary forgetfulness.

In Gray v. Union Electric Light & Power Co., Mo.App., 282 S.W. 490, plaintiff's decedent was held to have been contributorily negligent as a matter of law where the facts showed that deceased, an adult electrician with four or five years' experience, saw a fallen wire on the surface of a highway, knew that it was dangerous for him to come in contact with the wire which was obviously heavily charged with electricity, and yet voluntarily and unnecessarily placed himself in a dangerous situation with full knowledge and realization of the danger.

In Rojas v. Southern California Edison Co., 105 Cal.App.2d 258, 233 P.2d 141, plaintiff, a walnut picker, was furnished an aluminum shaker, 33 feet in length, with a hook on its end, for the purpose of shaking the tree limbs to cause the walnuts to fall. The evidence showed that plaintiff was fully aware of, and understood the dangerous condition created by, a 16,000-volt transmission line running through the walnut orchard. Plaintiff, in attempting to reach the top of one of the trees, touched the wire with the aluminum shaker, and was injured. The court there held that "Where a person is warned to keep away from a high voltage wire and not to touch it and is fully informed of the danger of so doing he is guilty of contributory negligence as a matter of law if he voluntarily contacts the wire." 233 P.2d 142[1].

Our statements of the facts in the Bryan and Gray cases demonstrate that those cases are distinguishable from the instant case. There is nothing said in either opinion which does or should cause us to con-

clude that instant decedent was guilty of contributory negligence as a matter of law. The Rojas case is like instant case in that both decedent in the present case and the injured plaintiff in the Rojas case were working in orchards wherein were located power lines and each contacted a power line with an aluminum instrument. But in the Rojas case, plaintiff had been furnished a long pole and warned not to touch the wire with the pole. He nevertheless did so, without any apparent reason or excuse. The court there held that plaintiff "voluntarily" contacted the wire. In the instant case, while deceased had been furnished a ladder and, in effect, warned not to touch the wire with the ladder, he did not voluntarily contact the wire with the ladder. On the contrary, contact resulted from the fact that the ladder had become entangled in tree branches and decedent pulled sufficiently hard to disentangle it, without necessarily knowing what the result would be, and thereby caused the aluminum ladder to unexpectedly fly over his head into the power line. We think the Rojas case is distinguishable on its facts, but whether that is so, we are not persuaded by that case to declare instant decedent contributorily negligent as a matter of law. See again: Thompson v. City of Lamar, supra.

Plaintiff's instruction 6–P was: "The Court instructs the jury that in this case the defendant pleads contributory negligence by Gerald Lebow, the deceased. Upon that issue the burden of proof is upon the defendant, and it devolves upon the defendant *to prove such contributory negligence by a preponderance of the evidence to the satisfaction of the jury,* before you are warranted in finding for defendant on that issue, unless the evidence offered by the plaintiff shows that he was guilty of contributory negligence, and in this connection you are further instructed that *the law presumes that the said Gerald Lebow, the deceased, was in the exercise of ordinary care in the absence of evidence to the contrary."* (Italics ours.) Defendant contends that the instruction was prejudicially erroneous because of the inclusion of the italicized phrases.

There is no doubt that an instruction which requires plaintiff or defendant to prove an issue "to the satisfaction of the jury" is erroneous. Machens v. Machens, Mo.Sup., 263 S.W.2d 724, 731, 732; Seago v. New York Cent. R. Co., 349 Mo. 1249, 1255–1257; 164 S.W.2d 336, 340, 341, 147 A.L.R. 372. It is also established that an instruction which includes the direction that a presumption exists as to the exercise of ordinary care by a deceased is erroneous, at least where there is evidence from which deceased's negligence on the occasion in question reasonably might be found by the jury. Moberly v. Kansas City, St. J. & C. B. Ry. Co., 98 Mo. 183, 186, 187, 11 S.W. 569, 570; Meyers v. City of Kansas, 108 Mo. 480, 487, 18 S.W. 914, 915; McKenna v. Lynch, 289 Mo. 16, 21–23, 233 S.W. 175, 176, 177. See also: Lampe v. Franklin American Trust Co., 339 Mo. 361, 379[5], 96 S.W.2d 710, 720[12, 13], 107 A.L.R. 465; Dove v. Atchison, T. & S. F. R. Co., 349 Mo. 798, 803–807, 163 S.W.2d 548, 551–553.

It is true, as plaintiff contends, that as yet no case has been reversed and remanded because of an instruction which contained the phrase "to the satisfaction of the jury." We have, however, reversed and remanded cases wherein there were instructions on the presumption of ordinary care where there was evidence of deceased's contributory negligence. McKenna v. Lynch, supra. We have no doubt that, when the effect of these two erroneous directions combined in the instant instruction is considered, instruction 6–P is reversibly erroneous.

Instant case was a close one on the issue of contributory negligence. There was ample evidence from which the jury reasonably could have found that Gerald Lebow failed to exercise ordinary care for his own safety under all the facts and circumstances in evidence. Instruction 6–P not only made it likely that the jury would give artificial probative force to the presumption of due care in that it would be likely to treat the presumption as evidence which must be overcome by evidence to the contrary, but the instruction also told the jury

that defendant's evidence as to plaintiff's contributory negligence must preponderate to the satisfaction of the jury in order to be such evidence "to the contrary" as would overcome the presumption that deceased was in the exercise of ordinary care.

■ Plaintiff's only answer to defendant's attack on instruction 6–P, in so far as concerns the presumption, is that any error thereby was cured by defendant's instruction 1–D. It is, of course, true that all instructions must be read together as a single charge. And it is also true that instruction 1–D directed that if certain hypothesized facts were true, plaintiff could not recover. However, there is nothing in instruction 1–D which cures the erroneous direction of 6–P as to the standard which the defendant's "evidence to the contrary" must have met in order for the jury to have found the facts hypothesized in 1–D to be true. We are of the opinion, therefore, that instruction 1–D did not cure the errors inherent in instruction 6–P, and that instruction 6–P is reversibly erroneous.

Defendant contends further that plaintiff's instruction 4–P is erroneous in that it failed to require the jury to find that defendant was negligent but, on the contrary, directed that defendant was negligent as a matter of law. Plaintiff concedes that the effect of the instruction is to tell the jury that defendant was negligent as a matter of law if the jury found the facts hypothesized in the instruction to be true. As we read the instruction, it reasonably may be construed as telling the jury that defendant had the duty to exercise ordinary care (as we have heretofore pointed out, defendant had the duty to exercise the highest degree of care) to insulate or isolate its wires so as to prevent injury to persons lawfully in close proximity thereto; that, therefore, if the jury found that plaintiff's decedent was required in pursuance of his duties as an apple picker to be in and near the apple tree mentioned in evidence, and that defendant should have reasonably anticipated that apple pickers would be in and near such tree, and that apple pickers working in and near such tree might come in contact with defendant's uninsulated live wires which were, if the jury so found, in close proximity to such tree, and that defendant knew or should have known of such in time to have remedied the condition prior to the casualty, and that such wires came in contact with the aluminum ladder deceased was using to pick apples from said tree and deceased was thereby injured and killed, then the jury would find for plaintiff.

It will be unnecessary for us to closely analyze the instruction or to discuss in detail defendant's contentions concerning it because the case is to be reversed and remanded for error in instruction 6–P. It is probable that, on a retrial, plaintiff will wish to redraw her instruction 4–P in the light of all the attacks made on it by defendant. However, we may observe that it should be unnecessary for plaintiff's main instruction to require the jury to find that the acts hypothesized in the instruction constituted negligence. This, because, in our opinion, if a jury reasonably could find, in effect, that defendant maintained uninsulated wires in a certain location in the orchard in relation to the apple tree in question, and that defendant should have reasonably anticipated injury to persons working in and about that tree as a result of the uninsulated wires, then it follows that defendant was negligent in failing to sufficiently isolate its uninsulated wires. We do point out, however, that plaintiff's instruction should require a clear and unmistakable finding to the effect that defendant should have reasonably anticipated injury to apple pickers working at the tree mentioned in evidence because of the location of the wires mentioned in evidence.

As plaintiff points out, instruction 4–P follows closely the language of an approved instruction in Thompson v. City of Lamar, supra, 17 S.W.2d 971. Defendant, however, contends that the instant case is not within the rule of the Thompson case; that instant facts are within the category of cases like Ratliff v. Mexico Power Co., Mo. App., 203 S.W. 232, 235, 236. In the Thompson case, supra, we stated: "The distinction between those cases wherein the

hypothesized acts or omissions of a defendant constitute negligence as a matter of law and those wherein such hypothesized acts or omissions of defendant may, or may not, constitute negligence, according as such may be found as an issuable fact by a jury, is readily recognized and clearly expressed by Trimble, J., speaking for the Kansas City Court of Appeals, in Ratliff v. Mexico Power Co., 203 S.W. [232] loc. cit. 235, as follows: 'It is true that in a number of cases it is said the fact of the electric shock is *conclusive proof* of the defect in the insulation and *of the negligence of defendant* (Geismann v. [Missouri-Edison] Electric Co., 173 Mo. loc. cit. 678 [73 S.W. 654]), or *that it will be conclusively presumed that* the insulation of the wire was defective (Von Trebra v. Laclede Gaslight Co., 209 Mo. 648, 659 [108 S.W. 559]; Sprinkles v. [Missouri] Public Utilities Co., Mo.App., 183 S.W. 1072; Trout v. [Laclede] Gaslight Co., 151 Mo.App. 207 [132 S.W. 58]; Clark v. [St. Louis & S] Railway Co., 234 Mo. [396] 419 [137 S.W. 583]). But in all such cases the wires were so close to where the electric company had reason to believe persons would lawfully go, that the injured party would necessarily come into personal bodily contact with them, and, of course, in such instances, *where the wires were likely to be touched by the body of one coming near them, the electric company was clearly negligent in placing them there, and the fact that the insulation failed to protect and an injury resulted conclusively showed negligence.'* " 17 S.W.2d 972.

The opinion in the Ratliff case does not contain the instruction held erroneous because it directed that defendant was negligent as a matter of law. We do not understand the Ratliff case to have ruled that the instruction would have been erroneous if it had required the jury to find that defendant's uninsulated wires were so located that defendant reasonably should have anticipated injury to persons, because of the location of the uninsulated · wires, who would lawfully carry objects through the door involved in that case.

 We are not satisfied, however, that the distinction attempted in the Ratliff case

and apparently approved in the Thompson case is sound in so far as it makes "negligence as a matter of law" depend solely upon the proposition as to whether there was a likelihood of "personal bodily contact." [203 S.W. 235.] It would seem that whether uninsulated wires are so located as to make a defendant negligent as a matter of law when one is injured by contact, either direct or indirect, should depend upon the facts of the particular case. In other words, what facts must be found by a jury before it follows that a defendant is negligent depends upon each particular case. And under the facts as to the location of the wires in the instant case, if the instruction required only that the jury find that Gerald Lebow was killed while working in the orchard by reason of contact with defendant's uninsulated wires, it would not follow that defendant was negligent. This, because defendant, under the instant facts, would not be negligent as a matter of law, unless the jury also found that defendant's wires were located in such close proximity to the tree in question that defendant reasonably should have anticipated injury to persons working in and near said tree because of the location of the uninsulated wires.

Defendant further contends that plaintiff's instruction 3–P was erroneous in that it informed the jury that it was defendant's duty to those who were *liable* to come in contact with its wires to either insulate the wires or so isolate them that persons would not be *liable* to come in contact with them. (We note that the same word "liable" is used in this same connection in instruction 4–P.) It has been said that "the word 'liable' is a word of such wide play in meaning as to admit of a gloss rendering its meaning as 'within the range of possibility.'" Root v. Kansas City Southern R. Co., 195 Mo. 348, 377–379, 92 S.W. 621, 631, 6 L.R.A.,N.S., 212. See also: Chandler v. Kansas City, Missouri, Gas Co., 174 Mo. 321, 324–329, 73 S.W. 502, 504, 62 L.R.A. 474. Plaintiff may be well advised on retrial to substitute some other word for "liable."

For the reason that instruction 6–P was prejudicially erroneous, the judgment is reversed and the case remanded for a new trial.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

HYDE & HOLLINGSWORTH, JJ., and DALTON, P. J., concur.

CONKLING, J., dissents in opinion filed.

CONKLING, Judge (dissenting).

Believing that under the facts of record in this case, as such facts appear in the transcript and are reflected in the principal opinion prepared by Commissioner Coil, that plaintiff's decedent was contributorily negligent as a matter of law, I respectfully dissent from the ruling that plaintiff was not guilty of contributory negligence as a matter of law.

I believe that knowing what deceased knew of his proximity to the wires carrying a deadly current, that it was not the exercise of due care on the part of deceased to have pulled or jerked the ladder in such manner and with such force that it would "go backward over his head" for the short distance which was required to bring it in contact with the power line.

The principal opinion holds that " * * * we may not say as a matter of law that deceased knew or should have known that the ladder was entangled in the branches to such an extent that pulling with sufficient force to disentangle it would be likely to cause the light aluminum ladder to go back over his head and into the wires.". The principal opinion further holds that "* * we may not say as a matter of law that Gerald must have known that a particular pull on an aluminum ladder, placed as his

ladder was, would cause its base to leave the ground and cause the ladder to suddenly go backward over his head." I cannot agree with either of those above quoted statements. Deceased knew that the ladder was rather securely "entangled in the branches" for it was only on the third or fourth pull or yank on the ladder that the ladder came free. And under all these instant circumstances, I think Gerald must be held in law to have known that to pull or yank the ladder three or four times in the manner and with the force he was required to use to free it, would likely cause it to move into the nearby electric wires which he knew carried a lethal current of electricity.