George BURROUGHS, (Plaintiff) Respondent,

v.

UNION ELECTRIC COMPANY, a Corporation, (Defendant) Appellant.

No. 31164.

St. Louis Court of Appeals.
Missouri.

March 19, 1963.

Motion for Rehearing or to Transfer
to Supreme Court Denied
April 10, 1963.

William H. Ferrell, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for appellant.

James F. Koester and James M. Byrne, St. Louis, for respondent.

JACK P. PRITCHARD, Special Judge.

In the trial court judgment was upon verdict in the original amount of $20,000, upon which a remittitur of $5,000 was ordered by the trial judge, to which order plaintiff complied, and from a final judgment in the amount of $15,000, defendant perfected this appeal.

Plaintiff, George W. Burroughs, thirty-four years of age at the time of trial, was on July 8, 1960, employed by the Millstone Construction Company, which was engaged

in driving pilings or H-beams into the ground during the course of construction of the Mark Twain Expressway in the northern part of St. Louis, Missouri, and in the vicinity of Bircher Boulevard and Kingshighway therein. Mark Twain Expressway at this point runs in a general southeast-northwest direction, crossing over the Terminal Railroad tracks which run in a general east-west direction there. Defendant's high voltage transmission lines run along both the north and south sides of the Terminal Railroad tracks and approximately parallel to them. The lower wire of the transmission line, carrying 34,500 volts, to the south of the tracks is the one from which plaintiff received electrical shock and burns on the occurrence in question.

Plaintiff is a carpenter by classification and also did welding. On said date his particular job was to get the pilings in place so that they could be driven by a pile driver which was rigged to a crane boom which was some 75 to 80 feet long. The pilings, being from 20 to 68 pounds per foot in weight, were in a pile which was located by a concrete retaining wall underneath and to the north of defendant's lower wire about 20 feet. The boom of the crane, which was facing north on this occasion, was south of the power line and the end of the boom was 25 to 30 feet from the line, and about 30 feet higher than the wire from which plaintiff received his shock. The wire itself at its ·lowest point was some 45 feet above the ground underneath it. The crane had been moved from a position north of the Terminal Railroad tracks to the south thereof in the morning of July 8, 1960, before plaintiff began his work, and was placed on a knoll or rise in the ground adjacent to the place where the row of pilings or H-beams were to be driven.

On the day in question, in accordance with his assigned duties, plaintiff took into his hand a metal cable, called a "load line" or "pile line", which was hanging vertically from the end of the crane boom, to guide it and pull it off the crane boom drum over to the north 40 or 45 feet to where a pile of pilings was stacked, in order that he might attach a "pincher" to the piling so it could be pulled to the rig and there be driven down by the pile driver. In doing so, plaintiff went down the knoll with the cable in his right hand, and as he got to the bottom of the hill he walked out and reached to get hold of the piling with his left hand, so that the line would not pull him back. He was facing east and looking down so he could see where to grab, and when he was about 6 inches past his arm reach from the pile, the cable somehow came into contact with the current from the defendant's uninsulated power line. In going down the hill or knoll, plaintiff was required to look down to keep his footing and to negotiate the rough ground. At the time he was shocked, plaintiff was standing some 6 feet to the west of the pile of H-beams, and afterwards, when he regained consciousness, he was 6 feet to the east of the pile.

No one ever gave plaintiff any notice that the wires in question were not insulated, and he could not actually see, by merely looking up at the wire, that there was no insulation on it. No one from defendant company ever approached him, or gave him any literature or brochures of any kind of notice that the overhead lines were not insulated, nor was there any warning on the towers carrying the lines indicating that the wires were not insulated. About a month before the injury, defendant's employees were working on towers at about the same place where the plaintiff was doing his same kind of work, in the same kind of manner—pulling the cable out and getting in close to the overhead lines, within 50 feet of and in plain view of defendant's employees, who were there quite a while. Defendant's official cars were also in the area. Defendant concedes, and its witness, Colteryahn, testified, that it had notice of workmen in the area of its power lines, and in answer to interrogatories defendant stated that it was aware of the highway construction and the use of the cranes in connection therewith, and that the line in question was uninsulated. Defendant also candidly admits

in its brief herein that the issue of foreseeability of the likelihood of injury to persons lawfully in proximity to its electrical lines is not contended in this case.

■ We hold then that plaintiff made a submissible case of negligence against defendant upon the issues of defendant's maintenance of this uninsulated wire in a place where it had reason to anticipate that persons (and this plaintiff) might lawfully be, and where such persons might be likely to come into contact with its wires, and also upon defendant's failure to warn plaintiff that the wire in question was uninsulated. Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S.W. 654; Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, 972(11, 12); Davis v. Missouri Electric Power Co., Mo.App., 88 S.W.2d 217, 222; Lebow v. Missouri Public Service Co., Mo. Sup., 270 S.W.2d 713, 715(2) (3); Erbes v. Union Electric Company, Mo.Sup., 353 S.W.2d 659, 664; see also 18 Am.Jur. 485, Sec. 93; 29 C.J.S. Electricity § 44, p. 589.

■ But the real question in this case is whether plaintiff was contributorily negligent as a matter of law.

Plaintiff claims that he was not, as a matter of law, guilty of contributory negligence because he was performing his work in a routine manner, and since he did not of his own knowledge *know* that the overhead power lines were uninsulated, and because the defendant in no way warned him thereof, and because the danger was not apparent by observation. Furthermore, he says that there was no evidence that he voluntarily caused or permitted a contact with defendant's line.

In addition to the facts stated above, on cross-examination plaintiff testified as follows:

"Q. You saw the steel towers that carry the electric lines in that location did you?

"A. Yes, sir.

"Q. You saw them prior to the accident of July 8, 1960, did you?

"A. I did, sir.

"Q. Mr. Burroughs, how long prior to July 8, 1960, had you been working at the general area of Bircher and Kingshighway and Euclid where this accident occurred?

"A. I believe that the date was around—now, I'm not sure of the date, but I think it was December 28, 1959.

"Q. You had been working in that general area for a little over six months, is that right?

"A. Yes, sir.

"Q. During that period of time, had you seen the steel towers with electric lines on them?

"A. Yes, I did.

"Q. Had you seen them frequently?

"A. Yes, sir.

"Q. Did you consider those towers to carry electric lines?

"A. Yes, sir.

"Q. Did you consider that the wires were electric wires on the towers?

"A. Yes, sir.

"Q. And did you also testify that the top of the crane was higher than the lowest of the electric lines?

"A. Yes, sir.

"Q. Did you know, prior to the time you pulled the crane cable down to connect it with the piling that the top of the crane and the top of the cable in your hand was at an elevation higher than the electric wires?

"A. Yes, sir.

"Q. Did you know that the piling that you were going down to attach was underneath the electric wires?

"A. Yes, sir.

"Q. Did you know that you were walking with the crane cable in the direction of the electric lines?

"A. Yes, sir.

"Q. You knew that the crane cable was higher than the wires?

"A. Yes, sir.

"Q. Is that correct? Did you at any time look up to see whether the cable at the crane was moving toward the wires and going to be in danger of contacting them?

"A. No, sir.

"Q. Where were you looking? Down?

"A. Yes, sir.

"Q. Would you intentionally have taken a metallic cable such as the crane cable and taken hold of it with one hand and hit the wires that you saw in that area?

"No, sir.

"Q. Is that because you considered these wires might be dangerous?

"A. Sure.

"Q. That is the reason you wouldn't have done it intentionally?

"A. Yes, sir.

"I wouldn't pet a dog either on the street, either, because he might bite me.

"Q. Then, Mr. Burroughs, did you consider, I believe you said, that these wires might be hazardous, is that right?

"A. Yes, sir.

"Q. I believe you testified that when you walked with the cable, or rolled the cable down underneath them and toward them, you knew that the cable went up higher than the wires, you didn't pay any attention to see wheth-

er or not it would contact it, is that right?

"A. No sir, I thought the crane was a sufficient distance, the operator and the foreman both looked at it.

"Q. But you didn't look up to see whether or not there was a possibility or a likelihood of contact, is that right?

"A. When I was pulling the cable, I didn't."

Plaintiff has cited several cases which are set forth below in the same order as in his brief, which cases under their facts may be distinguished from the case at bar.

Hickman v. Union Electric Light and Power Company, Mo.Sup., 226 S.W. 570, involved facts showing that the deceased was employed on a drilling machine used for the purpose of drilling holes in a street for a sewer project. At the time of the accident the insulation on defendant's wires had become defective. A sand line from the machine carelessly was carried by deceased's co-workers and was brought into contact with defendant's electric line while deceased had his hand on an iron lever on the machine. The court held that it does not affect the liability of defendant that the negligence of another concurred in producing it.

In Gellert v. Missouri Service Co., Mo. Sup., 221 S.W.2d 177, the only question was defendant's negligence and whether such negligence proximately caused Gellert's death, and there was no issue of deceased's contributory negligence.

In Clark v. St. Louis & S. R. Co., 234 Mo. 396, 137 S.W. 583, the evidence tended to show that plaintiff was careful to prevent the guy rope he was elevating and passing over the wire from touching it or to touch it with any force which might disturb the insulation. The wires appeared to be safely insulated, but had what is called "weather proof insulation", which was intended simply to protect the wires from being in-

jured by the weather. The court held that this presented a question of fact which was under proper instructions submitted to the jury.

In Potter v. Sac-Osage Electric Cooperative, Inc., Mo.Sup., 335 S.W.2d 192, it was held that the evidence presented a jury question as to deceased's contributory negligence. Plaintiff's decedent, Melvin Potter, was atop a grain bin where he was required to work in attaching a metal grain spout to the cone of the bin. The lower of the wires over the bin had been tied back by Melvin and his father, they not knowing much about electricity or that the lower wire was harmless. There was testimony that the spout never did touch the upper (charged) wire, that there was an electrical arc from the wire to the tin, and that the Potters, including Melvin, were using caution in attempting to place the tin in the cone of the bin.

In Lebow v. Missouri Public Service Co., Mo.Sup., 270 S.W.2d 713, the court held that the matter of decedent's negligence was for the jury, saying:

"In the instant case, while deceased had been furnished a ladder and, in effect, warned not to touch the wire with the ladder, he did not voluntarily contact the wire with the ladder. On the contrary, contact resulted from the fact that the ladder had become entangled in tree branches and decedent pulled sufficiently hard to disentangle it, without necessarily knowing what the result would be, and thereby caused the aluminum ladder to unexpectedly fly over his head into the power line."

In Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, the facts showed that plaintiff was on top of a building where defendant's bare, uninsulated wires were in close proximity to him. He observed them, endeavored at all times in his work to keep at a safe distance from the wires and to avoid coming into contact with them. He stood at a distance of 18 inches from them where he "felt sure everything was perfectly safe." The court held:

"While it well may be assumed that plaintiff, who apparently is a man of mature years and of average intelligence, knew and appreciated the danger of coming in actual contact with the uninsulated wires if they were carrying a high voltage of electrical current, yet we cannot properly assume from his own testimony, or from any other evidence in the record before us, that plaintiff knew, or reasonably should have known, that the wind was likely to blow the wires across the intervening space of 18 inches and into contact with his body, or that he fully appreciated the danger of the wind blowing the wires * * * 18 inches, or more, against the body of plaintiff, was so obviously glaring and imminent that plaintiff must be held to be conclusively chargeable with full knowledge and appreciation of such danger."

In Erbes v. Union Electric Company, Mo.Sup., 353 S.W.2d 659, plaintiff was held not to be contributorily negligent as a matter of law, as there was nothing to indicate that when he asked the crane boom operator there involved to give him a "little more slack", more slack would be given him than required, or so much more as to make it possible for contact to occur between the cable and the high voltage wires, nor that the cable would whip in the air to the extent it would travel in the air 6 to 8 feet and thus contact defendant's wires.

The last case cited by plaintiff, Foote v. Scott-New Madrid-Mississippi Electric Co-op., Mo.App., 359 S.W.2d 40, does not aid him, as the issue there was simply whether defendant electric company could have foreseen and anticipated that decedent would throw a tin can attached to a long copper wire over defendant's energized top electric wire and thus receive a fatal shock.

Giving to plaintiff the full benefit of his own testimony that he, his foreman and the crane operator looked at the line and didn't

think there was danger; that he could not tell if the wire was insulated; that he was performing his duties in the assigned way, routinely; that he did not voluntarily or intentionally come into contact with the wire; that he had to look down to negotiate the rough ground from the knoll or hill while pulling the cable off its drum by his weight, but considering also that which plaintiff testified to on cross-examination set forth above;—we are of the opinion that plaintiff's claims must be rejected, and we hold that plaintiff was contributorily negligent as a matter of law in coming into contact with defendant's high voltage wire.

Plaintiff had knowledge that the steel towers with electric lines on them were there; that he considered them to carry electricity, and they were hazardous; that the top of the crane boom to which the cable was attached was higher than the lower wire; that he knew the H-beams or pilings were underneath defendant's electric wires; and that he knew he was walking down the knoll in the direction of the wires.

Furthermore, plaintiff, as he went down the knoll, at no time looked up to see whether the cable at the crane was moving toward the wires, and that there was going to be danger of contacting them.

What was stated in Hamilton v. Laclede Electric Cooperative, Mo.Sup., 294 S.W.2d 11, 17(7), citing from 2 Restatement, Torts, 1251, 1252, Sec. 478, that "[w]hen the negligent act of the plaintiff is necessary to make a dangerous situation negligently created by the defendant effective in harm, the plaintiff's negligence is always a contributory factor in producing his harm and as such prevents him from recovery against the negligent defendant," is applicable here. Plaintiff, under his own testimony, must be held to knowledge of the dangerous propensities of these wires, and to the fact that he, himself, deliberately and voluntarily went down the knoll without looking to see if there was danger, and himself brought the cable into contact with the wires. Hamilton v. Laclede Electric

Cooperative, supra; 29 C.J.S. Electricity § 66 c, p. 629; 38 Am.Jur. 865, Sec. 189, Negligence; 34 A.L.R.2d 98. There was nothing in evidence in this case to show that plaintiff's attention was distracted as he started down the knoll toward the electric wires with the cable in his hand as would excuse him. Nor was there any evidence of any outside force, or the act of a third person, which concurred with the act of plaintiff (and the negligence of defendant) as would bring this case within the rules of some of the cases cited above and relied upon by plaintiff.

Accordingly, the judgment is reversed.

WOLFE, Acting P. J., and J. MORGAN DONELSON, Special Judge, concur.

RUDDY, P. J., and ANDERSON, J., not participating.